Tom LANIER d/b/a J.T. Lanier & Associates;  and Chattawood Insurance Company, Plaintiffs,

v.

OLD REPUBLIC INSURANCE COMPANY and Old Republic Union Insurance Company, Defendants.

Civil Action No. 95–T–1395–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 12, 1996.

William Joseph Baxley, Charles A. Dauphin, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, for Tom Lanier dba J.T. Lanier & Associates, Chattawood Insurance Company.

Richard H. Gill, John Fairley McDonald, III, Copeland, Franco, Screws & Gill, P.A., Julia J. Weller, Sasser & Littleton, P.C., Montgomery, AL, Michael R. Hassan, Albert E. Fowerbaugh, Jr., Lord, Bissell & Brook, Chicago, IL, for Old Republic Ins. Co. Inc., Old Republic Union Insurance Company.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

This lawsuit arises out of an arbitration award entered to resolve a dispute between plaintiffs Chattawood Insurance Company and Tom Lanier, d/b/a J.T. Lanier Associates, on one side and defendants Old Republic Insurance Company and Old Republic Union Insurance Company on the other side. It is now before the court on a petition for entry of judgment upon the arbitration award filed by Lanier & Associates and Chattawood Insurance and a motion to remand the arbitration award for clarification filed by the Old Republic companies. The court's jurisdiction has been properly invoked based on diversity of citizenship between the parties. 28 U.S.C.A. § 1332 (West 1966 & Supp.1993). For the reasons that follow, both the petition for entry of judgment and the motion for remand will be granted in part and denied in part.

## I. BACKGROUND

### A. Agency and Reinsurance Agreements

In 1987, Lanier & Associates entered into two agency agreements with the Old Republic companies to sell insurance policies to logging companies in Alabama, Georgia, and Florida. The agreements contained arbitration clauses for resolving disputes and also contained a provision stating that Alabama law would apply to disputes arising out of the contracts.[1]

In 1988, Chattawood Insurance, which had been formed by Lanier & Associates, entered into a quota-share reinsurance agreement with the Old Republic companies. Under the reinsurance agreement, Chattawood Insurance was to pay 25% of the first $300,000 of the loss on each claim paid by the Old Republic companies on the policies sold by Lanier & Associates and 25% of the loss adjustment expenses incurred by the companies in processing, that is, adjusting, the claim. In

---

1. The defendants' answer, etc., filed November 15, 1995, exhibits 1 & 2.

return, the Old Republic companies were to pay Chattawood Insurance 25% of the premiums received on these policies. The reinsurance agreement provided that disputes were to be resolved through arbitration.[2]

In addition, pursuant to agreements entered in 1991, Chattawood Insurance and the Old Republic companies established independent bank custody accounts in which Chattawood Insurance was to maintain sufficient funds to secure its obligations to the Old Republic companies.[3]

### B. *Arbitration Proceeding*

Numerous disputes arose between the parties regarding their business relationship. Most of the disputes centered around a subagent relationship Lanier & Associates and Chattawood Insurance established with a company in Florida called Chancy–Stoutamire, Inc. In 1992, the Old Republic companies terminated Lanier & Associates as an agent but continued using Chancy–Stoutamire, Inc. for the production of business. In November 1992, Lanier & Associates and Chattawood Insurance filed suit against the Old Republic companies in state court, and the Old Republic companies moved to compel arbitration. That case eventually went to the Alabama Supreme Court, which ruled that some of the claims in the case were subject to arbitration under the Federal Arbitration Act ("FAA"), as amended, 9 U.S.C.A. §§ 1–16 (West 1970 & Supp.1996). *Old Republic Insurance Company v. Lanier*, 644 So.2d 1258, 1263 (1994). The parties then proceeded to arbitration.

In November 1994, while the arbitration proceeding was pending, the Old Republic companies withdrew $445,427.50 from the bank custody accounts, claiming that those funds were owed to cover losses and loss adjustment expenses on policies sold by Lanier & Associates. Chattawood Insurance filed a motion with the arbitration panel, requesting that the Old Republic companies return the funds pending the outcome of the dispute. On December 9, 1994, the panel entered an interim order denying the motion based on the representation by the Old Republic companies that they would retain the funds in their own bank accounts until the conclusion of the arbitration proceeding. The panel ordered that "The status quo with respect to the custody accounts is to be maintained," and the Old Republic companies must give 15–days written notice to Chattawood Insurance and the panel before withdrawing further funds during the pendency of the proceeding.[4]

**2.** *Id.*, exhibit 3.

**3.** The plaintiffs' brief, filed February 5, 1996, exhibits 3 & 4.

**4.** The text of the panel's interim order is in part as follows:
"This cause came to be heard on the request of Chattawood Insurance Company ('Chattawood') that the Panel order Old Republic Union and Old Republic Insurance Company to return the funds withdrawn in November, 1994 from certain Custody Accounts located in AmSouth Bank, and,

\* \* \* \* \* \*

"Old Republic Union and Old Republic Insurance Company having represented to the Panel that the monies, cash, securities, or notes ('funds') withdrawn are presently located in accounts at AmSouth Bank which are controlled by Old Republic Union and will remain in said accounts until the conclusion of this arbitration proceeding;
"IT IS HEREBY ORDERED,
a) Chattawood's request that Old Republic Union and Old Republic Insurance Company return the funds pending the outcome of this dispute is hereby denied;

b) The status quo with respect to the Custody Accounts is to be maintained and Old Republic Union and Old Republic Insurance Company shall make no further request for withdrawal from the Custody Accounts during the pendency of this proceeding without giving 15 days written notice to the Panel and to Chattawood;
c) Old Republic Union and Old Republic Insurance Company shall not transfer any funds from the Old Republic Accounts without giving 15 days *prior written notice* to the Panel and to Chattawood.
d) Upon receipt of the 15 day notice (which may be sent by Fax) required by paragraph (b) or (c) above, and after consideration of any response or request for further relief made by Chattawood during such 15 day period, the Panel may alter, change, or modify this order in any manner it deems necessary. The Panel reserves the right to make any such alteration, change, or modification in executive session, by phone conference or otherwise, without further participation by the parties.
e) The Panel does not view this ORDER as dispositive of the substantive issues in this Arbitration."
The defendants' answer, etc., filed on November 15, 1995, exhibit 10.

On July 14, 1995, the panel entered a final award of $400,000 to Lanier & Associates for breach of contract and $420,312.93 to the Old Republic companies for past losses and loss adjustment expenses. The award also provided that Chattawood Insurance would be liable for future loss adjustment expenses, "provided that the claim and loss adjustment expenses attributed to any particular claim shall not exceed 11.8% thereof," and that "if the full reinsurance premium was not ceded on any policy written or renewed by Chancy–Stoutamire from July 27, 1992 through October 26, 1992, then no such claim or loss shall be payable by Chattawood on any such policy." [5] Upon receipt of the final award on July 26, the Old Republic companies sent a letter to the panel requesting "clarification and/or amendment" of three issues.[6] Two of the issues are the subject of this litigation: whether the award gave the Old Republic companies $420,312.93 for losses and loss adjustment expenses in addition to or in place of the $445,427.50 it withdrew from the custody accounts in November 1994; and what the phrase "11.8% thereof" means.[7]

### C. Federal Litigation

Shortly thereafter, Lanier & Associates and Chattawood Insurance turned to state court again and filed a motion for a preliminary injunction to prevent the arbitration panel from clarifying the award. The parties

---

5. The text of the final award is in part as follows:
"IT IS HEREBY ORDERED:
"I: That judgment is entered in favor of Tom Lanier, d/b/a J.T. Lanier & Associates ('Lanier') and against Old Republic Insurance Company ('ORIC') and Old Republic Union Insurance Company ('Capitol'), jointly and severally, in the amount of $400,000 for breach of contract.
"II: The Panel orders that if the full reinsurance premium was not ceded on any policy written or renewed by Chancy–Stoutamire from July 27, 1992 through October 26, 1992, then no such claim or loss shall be payable by Chattawood on any such policy; and, further, that cessions on claims and losses that are still open on any policy must be supported by customary documentation that the full reinsurance premium was paid on such policy.
"III: That this Panel's Order of December 9, 1994 ('Order') is hereby modified as follows:
A—ORIC and Capitol are entitled to payment from Chattawood for losses and loss adjustment expenses owed by Chattawood to ORIC and CAPITOL in the amount of $420,-312.93. Said payment shall be made first from funds (and interest or other increases thereon) withdrawn in November, 1994 from certain Custody Accounts located in AmSouth Bank ("Custody Accounts") and, to the extent necessary, then from the custody accounts.
B—Chattawood shall deposit in the Custody Accounts the amount of $47,200 to fund its obligation for additional IBNR reserves. The above amount, when added to the excess, ($92,096.30) that is currently in the Custody Accounts after payment of the amounts called for in Paragraph III A, represents the Panel's estimate of the additional IBNR reserves that should be funded. Chattawood shall have no further obligation for future increases in IBNR reserves.
C—The Custody Accounts shall be adjusted quarterly beginning September 30, 1995. Within 30 days of the end of each quarter ORIC and Capitol shall furnish Chattawood with a detailed statement of claims and losses, claim and loss adjustment expenses incurred and outstanding (provided that the claim and loss adjustment expenses attributed to any particular claim or loss shall not exceed 11.8% thereof) and the amount thereof paid since the last adjustment; such quarterly statement shall also detail the market value of assets in the Custody Accounts. Fifteen days after submission of the quarterly statement ORIC and Capitol will be reimbursed from the Custody Accounts for amounts paid and Chattawood will be paid the excess over 102%, if any, of the assets remained over funds required in the Custody Accounts.
D—Paragraphs b, c, and d, of said Order are hereby vacated.
"IV: Chattawood is not responsible or liable for any portion of the residual market or pooling assessments ORIC or Capitol may have to pay in the future.
"V: For purposes of implementing this decision, ORIC and Capitol shall be treated as a single entity, and Chattawood and Lanier shall be treated as a single entity.
"VI: The amounts due under Paragraphs I, II, III A and III B shall be due and payable 30 days after the date of this decision, and such interest shall accrue at the statutory legal rate in Alabama from such date on such amounts until paid.
"VII: All other claims of the parties to this Arbitration are denied."
The defendants' answer, etc., filed on November 15, 1995, exhibit 17.

6. The defendants' answer, etc., filed November 15, 1995, exhibit 18.

7. In their letter to the panel, the Old Republic companies contended that it was also unclear which breach-of-contract claim the $400,000 award was intended to satisfy. *Id.* Because that issue has not been raised by the Old Republic companies in any of their briefs, the court will not address it.

then discussed the issue and agreed to allow the courts to determine whether to remand the award. On October 11, 1995, the Old Republic companies filed a motion in state court to remand the award to the arbitration panel for clarification or in the alternative to modify, correct, or vacate the award.

Lanier & Associates and Chattawood Insurance then turned to federal court and filed a petition for entry of judgment. The Old Republic Companies filed an answer and counterclaims and refiled a motion to remand for clarification. The parties agreed to proceed in federal court, and so the petition for entry of judgment and the motion to remand are now before this court.

## II. DISCUSSION

### A. Choice-of-law

Lanier & Associates and Chattawood Insurance contend that, because the agency agreements state that Alabama law will govern disputes arising out of the contracts, the court should apply the Alabama Arbitration Act ("AAA"), Alabama Code of 1975 §§ 6–6–1 through 6–6–16 (Michie 1993), and enter a final judgment enforcing the award as it is, without remand. The Old Republic companies respond that the FAA applies and, under the FAA, this court has the authority to, and should, remand the award to the arbitration panel for clarification.

### 1. Volt and Mastrobuono

In *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the Supreme Court provided general guidelines regarding preemption of state law by the FAA. In that case, the parties had entered into an arbitration agreement requiring that California law be applied. 489 U.S. at 471, 109 S.Ct. at 1251. One of the parties moved for a stay of arbitration pending resolution of related litigation. California arbitration law allowed a stay, but the FAA did not. *Id.* The Court stated that the FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts." *Id.* at 474, 109 S.Ct. at

1253 (quotation marks omitted). "Section 2 of the FAA 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,' which requires that 'questions of arbitrability ... be addressed with a healthy regard for the federal policy favoring arbitration,' and that 'any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration.'" *Id.* (quoting *Moses. H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983)). The Court emphasized that "The FAA contains no express pre-emption provision, nor does it reflect a Congressional intent to occupy the entire field of arbitration." *Id.* at 479, 109 S.Ct. at 1255. "[W]hen Congress has not completely displaced state regulation in an area, state law may be pre-empted to the extent that it actually conflicts with federal law" or "undermine[s] the goals and policies of the FAA." *Id.* at 477, 109 S.Ct. at 1255.

Applying these guidelines, the Supreme Court held that, because the parties had "agreed that their arbitration agreement will be governed by the law of California," the FAA did not preempt state law. *Id.* at 470, 109 S.Ct. at 1251. The Court explained that, "Interpreting a choice-of-law clause to make applicable. state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction [in favor of arbitration] ..., nor does it offend any other policy embodied in the FAA." *Id.* at 476, 109 S.Ct. at 1254.

Here, both sides argue that the Supreme Court's recent interpretation of *Volt* in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, — U.S. —, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), supports their position. In that case, an arbitration panel awarded punitive damages in a dispute between a securities brokerage firm and a customer. — U.S. at —, 115 S.Ct. at 1214. The parties had entered into a standard-form client's agreement containing a provision stating that the "laws of the state of New York" would apply. *Id.* at —, 115 S.Ct. at 1215. The agreement also contained a provision stating that

disputes would be resolved through arbitration under the rules of the National Association of Securities Dealers. *Id.* at ——, 115 S.Ct. at 1218. While the Securities Dealers rules allow arbitrators to award punitive damages, New York law does not. *Id.* at ——, ——, 115 S.Ct. at 1214, 1218.

The Supreme Court held that the agreement did not preclude an award of punitive damages. The Court stated that, "At most, the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards." *Id.* "[W]hen a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Id.* (quoting *Volt,* 489 U.S. at 476, 109 S.Ct. at 1254). The Court concluded that the two contractual clauses were not contradictory and stated as follows: "We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Id.* at ——, 115 S.Ct. at 1219.

Relying on *Mastrobuono,* the Old Republic companies argue by analogy that "the clause in the Agency Agreements [in this case] providing that they 'shall be construed in accordance with the laws of Alabama' does not 'intrude upon' the separate arbitration clause, and thus the FAA applies to this controversy."[8] Lanier & Associates and Chattawood Insurance respond that, because the Supreme Court concluded that the provision adopting New York law and the arbitra-

tion provision did not conflict and because it was thus unnecessary to reach whether the choice-of-law provision was pre-empted by the FAA, *Mastrobuono* did not in any way curtail *Volt*'s teaching—in particular, its teaching that the FAA does not pre-empt state law where, as in the agency agreements between Lanier & Associates and the Old Republic companies, the parties have agreed that their arbitration agreements will be controlled by state law.

This court will not undertake unnecessarily the difficult task of deciding whether the circumstances presented here fall within the holding of *Mastrobuono* (federal law controls) or that of *Volt* (state law controls). The court must admit the difference between the two cases, while there, is difficult to grasp. *See Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1219 (Thomas, J., dissenting) ("the choice-of-law provision here cannot reasonably be distinguished from the one in *Volt*") Here, the parties agreed that their disagreements were subject to arbitration, and, indeed, they have already submitted them to arbitration; they dispute only whether state or federal arbitration law controls the issue of whether this court has the authority to send their award back to the arbitrators for clarification. It would be necessary to reach and resolve this dispute only if there is, in fact, a conflict between federal and state law. Therefore, the first issue for the court is whether there is a conflict, and to make this determination the court must examine federal and state arbitration law.

### 2. *The FAA*

Federal courts agree that review of arbitration awards should be very limited. According to the Eleventh Circuit Court of Appeals, an arbitration award made pursuant to the FAA can be vacated only if it is arbitrary and capricious, contravenes public policy, or meets one of the grounds established in § 10(a) of the FAA.[9] *Brown v.*

---

8. The defendants' brief, filed February 22, 1996, at 13 (quoting *Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1219, and the agreements in this case).

9. Section 10(a) of the FAA provides:
"(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating

the award upon the application of any party to the arbitration—
(1) Where the award was procured by corruption, fraud, or undue means.
(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing,

*Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 779 (11th Cir.1993). Most courts of appeals recognize these grounds for vacating an arbitration award, and some recognize the additional ground of manifest disregard for the law.[10] Despite this limited review, many appellate courts have stated that an arbitration award under the FAA may be remanded for clarification if the award is ambiguous or incomplete.[11]

Although the Eleventh Circuit has not squarely addressed the issue of the propriety of a remand solely for clarification within the context of the FAA, it has done so in cases involving arbitration awards arising from labor grievances and securities disputes. In a labor case, the Eleventh Circuit stated "that when terminology in an arbitrator's award can be interpreted in a variety of ways the 'normal course of action' is for the district court to remand the matter to the original arbitrator for clarification." *American Federation of State, County and Municipal Employees, Local Lodge No. 1803 v. Walker County Medical Center,* 715 F.2d 1517, 1519 (1983) (quoting *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division,* 481 F.2d 821, 824–825 (5th Cir. 1973)).[12] Similarly, in a securities case, the Eleventh Circuit approved remand of a vague and cursory arbitration award for clarification. The court stated that, "when an arbitration award can be interpreted in a variety of ways, it is normal to remand for clarification." *Ainsworth v. Skurnick,* 909 F.2d 456, 457 (11th Cir.1990), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993).[13]

■ A remand for clarification to complete an award or resolve ambiguity is different from a remand for clarification so that a court can determine whether to vacate the arbitrators' award. As the Seventh Circuit Court of Appeals has observed, the former does not "constitute a judicial invasion of the arbitrators' province but rather serve[s] to give the parties what they bargained for—a clear decision from the arbitrators." *Galt v. Libbey–Owens–Ford Glass Co.,* 397 F.2d 439, 442, *cert. denied,* 393 U.S. 925, 89 S.Ct. 258, 21 L.Ed.2d 262 (1968). Similarly, the Second Circuit has distinguished between these types of remands. The appellate court stat-

---

upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

9 U.S.C.A. § 10(a) (West Supp.1996).

**10.** For an overview of cases on this issue, *see Brown,* 994 F.2d at 779–780.

**11.** *See, e.g., Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 112 (2d Cir.1993) (remand for clarification permissible when award is incomplete); *Domino Group v. Charlie Parker Memorial Foundation,* 985 F.2d 417, 420 (8th Cir. 1993) (district court acted properly in remanding award for clarification in commercial contract dispute); *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327, 334 (3rd Cir.1991) (courts almost uniformly agree that remand allowable to clarify ambiguous award); *Americas Ins. Co. v. Seagull Compania Naviera,* 774 F.2d 64, 66–67 (2d Cir.1985) (award remanded for clarification of setoffs of arbitration awards in maritime contract dispute); *Island Creek Coal Sales Co. v. City of Gainesville,* 764 F.2d 437, 440 (6th Cir.) (because court does not have power under FAA to correct or modify ambiguous award, proper action is to remand for clarification), *cert. denied,* 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985); *Galt v. Libbey–Owens–Ford Glass Co.,* 397 F.2d 439 (7th Cir.) (district court acted properly in remanding for clarification of whether payment clause was within the scope of arbitration clause of a subcontract), *cert. denied,* 393 U.S. 925, 89 S.Ct. 258, 21 L.Ed.2d 262 (1968).

**12.** The review of labor arbitration awards, as with the review of awards made under the FAA, is very limited. In *American Federation,* the Eleventh Circuit stated that "Neither the notions of the district court or of this court as to the appropriate resolution of [complainants] grievance are of relevance. It is impermissible for courts to usurp the functions of the arbitrator by reviewing the merits of the award or construing its meaning." 715 F.2d at 1518.

**13.** *See also Brown,* 994 F.2d at 780 n. 4 (11th Cir.1993) (adopting the language of *Ainsworth*); *Aluminum Brick and Glass Workers Union v. AAA Plumbing Pottery Corp.,* 991 F.2d 1545, 1549 (11th Cir.1993) (an ambiguous or incomplete award can be remanded for clarification).

ed that "Courts have, on occasion, remanded awards to arbitrators for clarification, but they generally have done so to find out whether an issue has already been decided in arbitration rather than to discover whether the arbitrators had good reasons for their award." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972) (citations omitted). The court further stated that "Such decisions do not support a requirement that the arbitrators in this case explain their award" so the court could determine whether to vacate the award. *Id. See also Domino Group v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 420–421 (8th Cir.1993); *Employers Ins. of Wausau v. National Union Fire Ins. Co.*, 933 F.2d 1481, 1488, n. 6 (9th Cir.1991); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3rd Cir.1991); *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110–11 (2d Cir. 1980).[14]

■ Given that numerous courts of appeals have allowed remands for clarification of awards made under the FAA, and given that the Eleventh Circuit has allowed remands for clarification of arbitration awards made in labor and securities cases, this court concludes that it has the power under the FAA to remand an arbitration award for clarification if it determines that the award is ambiguous or incomplete.[15]

### 3. *The AAA*

The AAA dates back to 1852.[16] It provides that "an award made substantially in compliance with the provisions of this article is conclusive between the parties thereto and their privies as to the matter submitted and cannot be inquired into or impeached for want of form or irregularity if the award

determines the matter of controversy submitted, and such award is final unless the arbitrators are guilty of fraud, partiality, or corruption in making it." Alabama Code of 1975 § 6–6–14 (Michie 1993).

The Old Republic companies contend that the AAA does not apply because the Alabama Supreme Court has already determined in this case that the FAA preempts Alabama law. This court disagrees. The Alabama Supreme Court's decision in this case refers only to the FAA's preemption of Alabama law regarding the enforceability of an agreement to arbitrate. The Alabama Supreme Court stated that, "Under Alabama law, the specific enforcement of a predispute arbitration agreement violates public policy unless federal law preempts state law." *Old Republic*, 644 So.2d at 1260. However, " 'if an arbitration agreement is voluntarily entered into and is contained in a contract that involves interstate commerce, the FAA preempts state law and renders the agreement enforceable.' " *Id.* (quoting *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 628 So.2d 354, 355 (Ala.1993), *reversed on other grounds*, —— U.S. ——, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). The Alabama Supreme Court did not reach the issue of whether Alabama law conflicts with federal law regarding the power of a court to remand an arbitration award for clarification. Therefore, the Alabama Supreme Court's prior ruling in this case is not applicable to the issue.

■ The Old Republic companies also contend that the AAA applies to post- but not pre-dispute arbitration agreements. In support of this argument, the Old Republic companies rely on the Alabama Supreme Court's statement in the state proceedings that, "Un-

---

**14.** The Eleventh Circuit, however, has rejected remanding an award in the absence of ambiguity. In *Brown*, the plaintiffs sought vacatur of an arbitration award on the grounds that it was arbitrary and capricious and against public policy. 994 F.2d at 779. The district court remanded to determine the basis for the award. *Id.* at 778. The Eleventh Circuit stated that the district court erred because "A remand for clarification is proper only when the award itself can be interpreted in a variety of ways." *Id.* at 780 n. 4.

**15.** Lanier & Associates and Chattawood Insurance refer to *Robbins v. Day*, 954 F.2d 679 (11th

Cir.1992). There, the Eleventh Circuit stated that "It is well settled that arbitrators are not required to explain an arbitration award and that their silence cannot be used to infer a grounds for vacating an award." 954 F.2d at 684. *Robbins* is inapplicable to the facts of this case because it involves a motion to vacate an arbitration award, not a motion to clarify.

**16.** *See* Alabama Code of 1975 § 6–6–1 (Michie 1993).

der Alabama law, the specific agreement of a predispute arbitration agreement violates public policy." 644 So.2d at 1260. However, under Alabama law, no arbitration agreement can be specifically enforced, regardless of when the agreement was formed. Alabama Code of 1975 § 8–1–41(3) (Michie 1993).[17] Furthermore, in cases where no party was requesting specific enforcement of an arbitration agreement, the Alabama Supreme Court has applied the AAA to pre-dispute arbitration agreements. *See, e.g., Pruett v. Williams,* 623 So.2d 1115 (Ala. 1993). Therefore, the court concludes that the AAA applies to pre-dispute arbitration agreements.

■ Finally, as does the FAA, the AAA allows for remand for clarification. First, the AAA on its face says that the "award cannot be inquired into or impeached for want of form or irregularity." Alabama Code of 1975 § 6–6–14 (Michie 1993). This is consistent with the law in the federal courts of appeals which allows a remand for clarification. These appellate courts, as stated, have distinguished a remand for clarification of an ambiguous or incomplete award from a remand for clarification to provide reasons for an award so that the court can determine whether to vacate the award. *See, e.g., Domino Group,* 985 F.2d at 420–421; *Colonial Penn,* 943 F.2d at 334; *Diapulse Corp.,* 626 F.2d at 1110–11; *Sobel,* 469 F.2d at 1216.

Second, the grounds provided in the AAA for vacating an award are fraud, partiality, or corruption in making it. These grounds are very similar to those provided in the FAA, which include, "Where the award was procured by corruption, fraud, or undue means" and "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C.A. § 10(a) (West Supp.1996). Because the limitations imposed by both the FAA and the AAA on court review are similar, this court concludes that the AAA allows for a remand for clarification of an ambiguous or incomplete award in the same manner as does the FAA.

Third, the Alabama caselaw relied upon by Lanier & Associates and Chattawood Insurance is not inconsistent with a remand for clarification. They refer to the 100–year–old case of *Edmundson v. Wilson,* 19 So. 367 (Ala.1896), for the proposition that, under the AAA, an arbitration panel is powerless to modify its award once the award is final.[18] In *Edmundson,* an arbitration panel issued an award on August 10, 1891, resolving a commercial dispute between former business partners. 19 So. at 369. However, one of the parties produced a second written ruling dated August 19. *Id.* The Alabama Supreme Court held that the first ruling was binding. The court stated that, "On its face, it purports to be final, and must be so treated in the absence of evidence legally sufficient for setting it aside." *Id.* The court explained that, "It is said that the arbitrators, in rendering that award, agreed to meet again, to correct any errors which the parties might find in it. If such had been the case it would not have been final. But no such reservation was made in the instrument purporting to be final,—where it ought to have appeared, if made at all;—and it is well settled that when an arbitrator or referee has made his award or report as a completed instrument, he has exhausted his authority, his power is at an end, and he is *functus officio.*" *Id.* The court was also persuaded by the fact that the second document was signed by the arbitrators individually rather than jointly. *Id.* One of the arbitrators was in Texas at the time and signed it upon his return. A second arbitrator signed it "very improperly, to gratify [the third arbitrator], without believing there was any error in the previous award." *Id.* In addition, the court was concerned that the appellee had no notice of the second proceeding. *Id.*

The doctrine of *functus officio* describes an entity "which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect." *Black's Law Dictionary* 606 (5th ed. 1979). Several courts of appeals have ruled that the doctrine is not inconsis-

---

**17.** Section 8–1–41(3) states that "The following obligations cannot be specifically enforced: An agreement to submit a controversy to arbitration."

**18.** There is very little modern caselaw interpreting the AAA.

tent with a remand for clarification of an ambiguous award. In *Colonial Penn*, the Third Circuit stated that "The policy underlying this general rule is an 'unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.'" 943 F.2d at 331–332 (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 (3rd Cir.1967)).[19] The court in *Colonial Penn* further stated that "It should be apparent that the policy reasons for the *functus officio* doctrine precluding an arbitration panel from reconsidering its award are not applicable with the same force to action by the district court. In the first place, the court is not subject to the concerns about the arbitrator's lack of continuity and 'isolated activity.' Second, the court is not likely to be subject to the 'evil of outside communication and unilateral influence.' Third, and most important, the court must necessarily exercise some review of the arbitral award when a motion to confirm is before it." *Id.* at 333 (quoting *La Vale,* 378 F.2d at 572). The court further noted that the FAA "itself provides for a remand to the arbitrators for purposes of rehearing in certain circumstances."[20] Thus, the Third Circuit concluded that, "Because of the limited purpose of [a remand for clarification of an ambiguous award], which serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced, there is not even a theoretical inconsistency with the *functus officio* doctrine." *Id.* at 334. The rationale of *Colonial Penn* was recently adopted by the Eighth Circuit in *Domino Group,* 985 F.2d at 420–421, and similar logic has been followed by the Sixth Circuit in a labor arbitration case, *Industrial Mut. Ass'n v. Amalgamated Workers, Local Union No. 383,* 725 F.2d 406, 412 n. 3 (6th Cir.1984).

■ For the above compelling reasons, this court not only joins the chorus in concluding that the *functus officio* doctrine does not preclude a motion for remand for clarification under the FAA, the court also believes that Alabama courts would similarly conclude that the doctrine does not preclude a clarification motion under the AAA. In *Edmundson,* the Alabama Supreme Court was concerned about irregularities and improprieties in the making of the later award. It noted that one arbitrator was out of the state on the date of the purported signing of the award, and another arbitrator had exercised undue influence on a member of the panel. 19 So. at 369. The court further noted that appellee had no notice that the panel was even considering making a second award. *Id.* These concerns (irregularities and undue influence) are precisely the ones given by the Third Circuit as a justification for the *functus officio* doctrine. In this case, there is no evidence of irregularities or improprieties. Therefore, the court has the power to order a remand for clarification of an arbitration award without offending Alabama law.

In conclusion, because both the FAA and the AAA allow for limited remand of an arbitration award for clarification, this court does not have to choose which of the two statutes to apply. The next question for this court, therefore, is whether a clarification remand is allowed and warranted under the circumstances presented by the parties.

B.  *Disputes over the Arbitration Award*

1.  *Past Losses and Loss Adjustment Expenses*

■ The Old Republic companies contend that, because the 1995 final award is ambiguous and incomplete with respect to payments for past losses and loss adjustment expenses, it cannot be enforced as is and instead should be remanded for clarification. They argue that the $445,427.50 they withdrew from the custody accounts in November 1994 should cover losses and loss adjustment expenses prior to September 1994, while the $420,-

**19.**  *See also McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Washington–Baltimore Newspaper Guild, Local 35 v. Washing-*

*ton Post Co.,* 442 F.2d 1234, 1238–39 (D.C.Cir. 1971); *American Centennial Ins. Co. v. Arion Ins. Co.,* 1990 WL 52295 (S.D.N.Y. April 18, 1990).

**20.**  *See* 9 U.S.C.A. § 10(e).

312.93 award they received from the panel was to cover losses and loss adjustment expenses incurred from September 1994 through April 1995.[21] Chattawood Insurance responds that the Old Republic companies are entitled to only $420,312.93 of the $445,-427.50 they withdrew from the custody accounts in November 1994.[22]

First of all, the award is not ambiguous as to this matter. The relevant part of the final award states that "this Panel's Order of December 9, 1994 ... is hereby modified as follows: ... [the Old Republic companies] are entitled to payment from Chattawood for losses and loss adjustment expenses owed by Chattawood to [the Old Republic companies] in the amount of $420,312.93. Said payment shall be made first from funds (and interest or other increases thereon) withdrawn in November, 1994 from certain Custody Accounts located in AmSouth Bank ... and, to the extent necessary, then from the custody accounts." [23]

This language is not ambiguous. Its plain meaning is that the $420,312.93 owed by Chattawood Insurance to the Old Republic companies for losses and loss adjustment expenses must come from the $445,427.50 the Old Republic companies withdrew from the custody accounts in November 1994. Further money, if any, owed by Chattawood Insurance to the Old Republic companies must come from the custody accounts that Chattawood Insurance was required to fund. Because the arbitration panel clearly ordered that money withdrawn in November 1994 ($445,427.50) be first used to offset the debt owed by Chattawood Insurance ($420,312.93), the panel could not have intended for the Old Republic companies to keep all the money it withdrew in November 1994 independent of the debt.

Second, the final award is not, as the Old Republic companies contend, incomplete as

to this matter. The Old Republic companies argue that the final award should be remanded so that the panel can clarify incomplete portions of the award. The Old Republic companies argue that they viewed the withdrawal of the $445,427.50 amount as a settled issue prior to the final award and therefore did not request it from the arbitration panel.[24] Admittedly, an award that is incomplete can be remanded for clarification, *Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir.1993), but only when an issue was properly submitted to the panel, and the panel neglected to resolve it. *Colonial Penn*, 943 F.2d at 334. The contention of the Old Republic companies that the issue of the withdrawal of the $445,427.50 was settled is contradicted by the language of the panel's 1994 interim order. In that order, the panel allowed the Old Republic Companies to keep the money in their own accounts based on their representation that the money would "remain in said accounts until the conclusion of the arbitration proceeding." [25] The last sentence of the order then states that "The Panel does not view this ORDER as dispositive of the substantive issues in this Arbitration." [26] Therefore, the issue of whether Old Republic could keep the $445,427.50 was not a settled issue prior to the final award.

In addition, after the arbitration panel's hearing in April 1995, the Old Republic companies submitted a post-hearing brief stating that, as of June 30, 1995, Chattawood Insurance owed them a total of $420,312.93 in losses and loss adjustment expenses.[27] The Old Republic companies never requested in their brief that, in order to cover losses and loss adjustment expenses incurred prior to September 1994, they should be awarded the $445,427.50 previously withdrawn from the

**21.** The defendants' brief, filed February 22, 1996, at 5, 15.

**22.** The plaintiffs' brief, filed February 26, 1996, at 13.

**23.** *See supra* note 5.

**24.** The defendants' brief, filed March 15, 1996, at 2–3.

**25.** *See supra* note 4.

**26.** *Id.*

**27.** The defendants' brief, filed February 22, 1996, exhibit 21.

custody accounts. After the panel's July 1995 final award, the Old Republic companies wrote the panel a letter "sincerely apologiz[ing] if our position regarding the $445,-428.58 previously withdrawn was not made clear to the Panel by the post hearing submission."[28] The letter conceded that, "Unfortunately, this request was not a model of clarity concerning the prior withdrawal."[29] Because the issue of whether the $445,427.50 should be used only to cover losses and loss adjustment expenses incurred prior to September 1994 was never raised by the Old Republic companies with the arbitration panel, the panel did not neglect to resolve the issue. The panel cannot neglect an issue that was not submitted. The negligence, if any, was that of the Old Republic companies in failing to bring the matter to the attention of the panel. Therefore, the panel's award is not incomplete and does not require clarification on this issue.

Third and finally, it is apparent that the Old Republic companies are not really seeking clarification as to this issue. A close examination of their submissions to this court and the arbitration panel reveals that their true desired result is a modification or vacatur of the arbitration panel's final award. For example, their counterclaims filed in this court are, in fact, a request to modify and vacate. Count II of the counterclaims is entitled *"Modification* and *vacating* parts of the order."[30] In addition, at the end of Count II, the Old Republic companies state as follows: "Petitioners Old Republic Insurance Company and Old Republic Union Company hereby request this court to: (a) *Vacate* the Panel's award in Lanier's favor in the amount of $400,000; [and] (b) *Vacate* that portion of the Order requiring Old Republic to satisfy the $420,312.93 award in its favor 'first from funds (and interest or other increases thereon) withdrawn in November 1994.'"[31] Similarly, in their post-award letter to the arbitration panel, their intent was unequivocal; they asked "that the Order of

July 14, 1995 be *modified* so that the $420,-312.93 award be entered as a judgment against Chattawood and that the restriction placed by the December 9, 1994 order on the $445,428.50 be lifted so that Old Republic may apply these funds to the prior September 1994 indebtedness."[32]

By requesting a remand for clarification instead of modification and vacatur, the Old Republic companies are trying to circumvent the strict limitations on review of the FAA. Because judicial review of an arbitration award is very limited and because an award may be modified and vacated only under very narrow circumstances, *see, e.g.,* U.S.C.A. § 10(a) (West Supp.1996); Alabama Code of 1975 § 6–6–14 (Michie 1993), a court must be careful—indeed, it is obliged—to pierce the language of any request to remand for clarification to assure that it is not a disguised request for modification or vacatur of an award. Here, the Old Republic companies' request to remand for clarification as to whether the $420,312.93 is to be paid from the $445,427,50 November withdrawal is not only a disguised request for modification and vacatur, it is a thinly disguised one.

Because the court concludes that the award is not ambiguous and is not incomplete with respect to the amount awarded for past losses and loss adjustment expenses, it will deny the Old Republic companies' request for a remand for clarification of this issue.

### 2. *Future Loss Adjustment Expenses*

■ Lanier & Associates and Chattawood Insurance had contended that the Old Republic companies inflated their loss adjustment expenses so that they would receive excessive reimbursements from Chattawood Insurance. Because an indeterminable amount of future losses may be incurred on policies already sold by Lanier & Associates, the arbitration panel resolved the issue as follows in its July 1995 final order: "Within 30 days of the end of each quarter [the Old

---

**28.** The defendants' answer, etc., filed November 15, 1995, exhibit 18.

**29.** *Id.*

**30.** The defendants' answer, etc., filed November 15, 1995, at 20 (emphasis added).

**31.** *Id.* at 23 (emphasis added).

**32.** The defendants' answer, etc., filed November 15, 1995, exhibit 18 (emphasis added).

Republic companies] shall furnish Chattawood with a detailed statement of claims and losses, claim and loss adjustment expenses outstanding (provided that the claim and loss adjustment expenses attributed to any particular claim or loss shall not exceed *11.8% thereof*)...." [33]

It is not clear what the phrase "11.8% thereof" modifies in the final award. It could modify either "claims" or "losses" or some other word or phrase. The reinsurance agreement between Chattawood Insurance and the Old Republic companies distinguishes between a claim and a loss.[34] A "claim" is the amount an insured or third party in requesting, and a "loss" is the amount "actually paid by the [Old Republic companies] in the settlement of claims or payments of judgments, for which [they are] liable." [35] Therefore, for example, if the phrase modifies losses, the Old Republic companies would not be entitled to any adjustment expenses if the companies completely denied a claim.

In addition, it is unclear what role, if any, the 25% requirement still has under the reinsurance agreement. For example, assuming that the "11.8% thereof" phrase modifies losses and the Old Republic companies incur a loss of $1,000 and $500 in loss adjustment expenses on a claim, the award could be subject to the following meanings:

● The award could mean that Chattawood Insurance's share of loss adjustment expenses would be 25% of the Old Republic companies' loss adjustment expenses, but in no event could the Old Republic companies' loss adjustment expenses exceed 11.8% of their loss. Using this approach, the calculation would be as follows: (1) Because the Old Republic companies' loss adjustment expenses ($500) exceed 11.8% of its loss (11.8% × $1,000 = $118), the Old Republic companies' loss adjustment expenses would be $118. (2) Under the reinsurance agreement, Chattawood Insurance's share of loss adjustment expenses would be 25% of the Old Republic companies' loss adjustment expenses (.25 × $118 = $29.50), that is $29.50.

● Or, the award could mean that Chattawood Insurance's share of loss adjustment expenses would be 25% of the Old Republic companies' loss adjustment expenses, but in no event could Chattawood Insurance's share exceed 11.8% of the Old Republic companies' loss. Using this approach, the calculation would be as follows: (1) Under the reinsurance agreement, Chattawood Insurance's share of loss adjustment expenses would be 25% of the Old Republic companies' loss adjustment expenses (.25 × $500 = $125), that is $125. (2) But because $125 exceeds 11.8% of the Old Republic companies' loss (11.8% × $1,000 = $118), Chattawood Insurance's share would be only $118.

● Of course, the award could mean that, with regard to loss adjustment expenses, the 11.8% figure simply replaces the 25% figure in the reinsurance agreement. The court will therefore require that the final award be remanded to the arbitration panel for clarification as the meaning of the phrase "11.8% thereof." The bottom line is that the panel needs to provide a detailed explanation of how Chattawood Insurance's future share of loss adjustment expenses should be calculated within the provisions of the reinsurance agreement and in accordance with the explanation given in the final award.

In post-award submissions to this court and to the panel, the Old Republic companies have complained that the 11.8% provision is "unfair and unworkable" and should be "removed" from the award.[36] This court has *not* found that the award is in any part "unfair" or "unjust," or that it is otherwise arbitrary, capricious, or against the public interest, in violation of the FAA or the

---

**33.** *See supra* note 5 (emphasis added).

**34.** The defendants' answer, etc., filed November 15, 1995, exhibit 3 at 2, 5.

**35.** *Id.*

**36.** The defendants' answer, etc., filed November 15, 1995, exhibit 18.

AAA.[37] Thus, this court's charge to the arbitration panel, on remand, does *not* include the authority to change or vacate the award in any respect, and none of the parties should request this of the panel.

### 3. *Interest on Awards*

■ Lanier & Associates contends that it is entitled to interest on its $400,000 breach-of-contract award because it was not paid the $400,000 until January 2, 1996.[38] The Old Republic companies contend that the interest on that award should be offset against the interest owed on the $420,312.93 award they received for past losses and loss adjustment expenses.[39] The companies note that ¶ VI of the panel's July 1995 final award states that "The amounts due under Paragraphs I, II, III A and III B shall be due and payable 30 days after the date of this decision, and interest shall accrue at the statutory legal rate in Alabama from such date on such amounts until paid." [40] They further observe that ¶ I awards $400,000 to Lanier & Associates from the Old Republic companies, and ¶ III A awards $420,312.93 to the Old Republic companies from Lanier & Associates.

The position of the Old Republic companies would have merit if this court had agreed with their contention that they were entitled to $420,312.93 in addition to 445,-428.50. Then, the Old Republic companies would be due a $420,312.93 amount that has not been paid and has been accruing interest. However, this court has ruled that the Old Republic companies are not entitled to both amounts and that, in accordance with ¶ III A of the panel's award, the $420,312.93 amount for losses and loss adjustment expenses is to be satisfied from the money the Old Republic companies had already withdrawn from the custody accounts. That money, which was in bank accounts controlled by the Old Republic companies, had been restricted by the panel's interim order of December 9, 1994. Once the panel vacated its interim order, the Old Republic companies were free to withdraw $420,312.93 from the accounts they controlled. In effect, they received the $420,-312.93 on the date of the final award. There is no interest due the Old Republic companies on that amount, and thus there is nothing the Old Republic companies may use as an offset. Lanier & Associates is entitled to the accrued interest on the $400,000 breach-of-contract award, without offset.

### 4. *Premiums Not Ceded*

In its list of claims submitted to the arbitration panel, Chattawood Insurance charged that the Old Republic companies had "breached the reinsurance agreement by failing to cede the entire annual premiums due Chattawood on policies sold prior to the date the reinsurance agreement was allegedly terminated." [41] In ¶ II of the final award, the panel stated that, "if the full reinsurance premium was not ceded on any policy written or renewed by Chancy–Stoutamire from July 27, 1992 through October 26, 1992, then no claim or loss shall be payable by Chattawood on any such policy." [42]

Chattawood Insurance now maintains that, under ¶ II of the order, it is entitled to $2,664.13 in claims paid on policies for which it did not receive its full share of the premium.[43] The court rejects this argument for two reasons. First, ¶ II provides for prospective relief in that it relieves Chattawood Insurance of the obligation to pay for future losses or claims on policies for which it not receive the "full reinsurance premium." Chattawood Insurance's claim for the $2,664.14 is, however, retrospective in the sense that the claim is for *repayment* for losses and claims already paid, albeit incorrectly, to the Old Republic companies; the

---

**37.** Indeed, whether the award is arbitrary, capricious, or against the public interest, in violation of the FAA or the AAA, is not before the court. Although their counterclaim suggests otherwise, the Old Republic companies have limited it to only a request for clarification.

**38.** The plaintiffs' brief, filed February 5, 1996, at 35–36.

**39.** *Id.* at 27.

**40.** *See supra* note 5.

**41.** The defendants' brief, filed February 22, 1996, exhibit 7 at ¶ 44.

**42.** *See supra* note 5.

**43.** The plaintiffs' brief, filed February 5, 1996, at 37.

award makes no mention of repayments. It is also retrospective in the sense that Chattawood Insurance now improperly seeks from this court what it could not obtain from the panel. Chattawood Insurance presented to the panel a "claim of breach of contract as to premiums not ceded," and asked for an award of "compensatory damages in an amount to be determined by the ... panel."[44] The panel did not render an award for compensatory damages on any breach-of-contract claim in favor of Chattawood Insurance,[45] and the panel expressly stated that "All other claims of the parties to this Arbitration are denied."[46] Having failed before the arbitration panel, Chattawood Insurance cannot now reassert this entitlement to this court.

Second, the court is unable to determine how Chattawood Insurance calculated the $2,664.14 figure. In an affidavit submitted in support of the petition for entry of judgment, John Lanier stated that "I have identified four policies to date that were written by Chancy–Stoutamire that the full reinsurance premium was not paid to Chattawood. The detailed paid claim report for 1992 and 1993 shows amounts totaling $4,055.54 charged Chattawood on the following claims."[47] Chattawood Insurance offers no explanation as to why it claims $2,664.14 rather than $4,055.54.

The court therefore concludes that Chattawood Insurance is not entitled to $2,664.13 under ¶ II of the panel's final award.

### 5. *Excess in Custody Accounts*

Data provided by the Old Republic companies on January 2, 1996, showed that the custody accounts had a combined surplus of approximately $106,000.[48] Chattawood Insurance contends that the arbitration panel's order entitles it to these surplus funds, plus interest.[49] Paragraph III C of the panel's final award states that "The Custody Accounts shall be adjusted quarterly beginning September 30, 1995.... Fifteen days after submission of the quarterly statement [the Old Republic companies] will be reimbursed from the Custody Accounts for amounts paid and Chattawood will be paid the excess over 102%, if any, of the assets remaining over funds required in the Custody accounts."[50] The Old Republic companies' response to Chattawood Insurance's contention is that, if the court determines that they are entitled to both the sum of $445,428.50 and the sum of $420,312.93, then the custody accounts will actually be substantially underfunded.[51] The court has, however, determined that the Old Republic companies are entitled to only the $420,312.93 amount. Therefore, under ¶ III C of the award, Chattawood Insurance is entitled to the excess over 102% of the assets remaining over funds required in the custody accounts but is not entitled to interest at the statutory rate because the interest provision of the order applies only to the amounts awarded under ¶¶ I, II, III A and III B.

### C. *Affirmative Defenses*

The court has held that the Old Republic companies are entitled to have the final award remanded to the extent that the phrase "11.8% thereof" should be clarified. However, before concluding, the court must address two affirmative defenses asserted by Lanier & Associates and Chattawood Insurance.

### 1. *Statute of Limitations*

Lanier & Associates and Chattawood Insurance contend that the Old Republic companies' remand request is time-barred be-

**44.** The defendants' brief, filed February 22, 1996, exhibit 7 at ¶¶ 44, 45.

**45.** The $400,000 breach-of-contract award was in favor of Lanier & Associates.

**46.** *See supra* note 5.

**47.** The defendants' brief, filed February 22, 1996, exhibit 9.

**48.** These data are included in exhibits to two letters from the Old Republic companies dated January 2, 1996. The letters are included as exhibits 7A and 7B to the plaintiffs' brief, filed February 5, 1996. Chattawood calculates the combined surplus as $106,622.55. The court's calculations show the surplus to be $106,694.55.

**49.** The plaintiffs' brief, filed February 5, 1996, at 36.

**50.** *See supra* note 5.

**51.** The defendants' brief, filed February 22, 1996, at 28–29.

cause it was not filed within the applicable limitations period under either federal or state law.

■ The only limitations period in the FAA is § 12, which states that "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C.A. § 12 (West 1970 & Supp.1996). As stated above, a remand for clarification does not include a vacatur, modification, or correction of an award. Therefore, the § 12 limitations period does not apply.[52] *See Domino Group*, 985 F.2d at 420 (district court acted properly in remanding award for clarification more than 90 days after the award was made).

■ The AAA provides that "Either party may appeal from an award under this article. Notice of the appeal to the appropriate appellate court shall be filed within 10 days after receipt of notice of the award and shall be filed with the clerk or register of the circuit court where the action is pending." Alabama Code of 1975 § 6–6–15 (Michie 1993). When a party appeals under the AAA, the court is "required to review the merit of [the arbitrators'] award both as to the law and facts, just as if it were originally the judgment of the trial court itself." *Bell*

v. A. MacKay & Co., 72 So. 83, 85 (Ala.1916). At issue in this case is not a review of the factual and legal merits of the panel's award, but rather whether a remand for clarification is needed. The AAA's limitations period does not apply.

### 2. *Acceptance of Benefits*

■ Lanier & Associates and Chattawood Insurance contend that, by accepting some of the benefits of the arbitration award, the Old Republic companies waived all rights to clarification of the award. In two letters dated January 2, 1996, in order to satisfy the breach-of-contract award by the arbitration panel, the Old Republic companies paid Lanier & Associates a total of $400,000 from funds withdrawn from the custody accounts in November 1994.[53]

In *Crawford v. Andrew Systems, Inc.*, 39 F.3d 1151 (11th Cir.1994), a plaintiff filed a wrongful death suit in Alabama against a trucking company on behalf of the estates of individuals killed in an auto accident. The trial judge severed plaintiff's respondeat superior claim from her negligent entrustment claim and held separate trials using the same jury. In the trial on the respondeat superior claim, the jury returned punitive damage awards of $2,250,000 to each estate. In the

---

**52.** Even if the limitations period of § 12 did apply, the Old Republic companies' counterclaim for remand for clarification would not be time-barred. In this case, although the arbitration panel signed the award on July 14, 1995, the award was not received by the Old Republic companies until July 26. The Old Republic companies therefore had three months, or until October 26, to file a claim based on the award. Lanier & Associates and Chattawood Insurance argue that, although the Old Republic companies filed a timely counterclaim for clarification in state court on October 11, that fact is of no moment because the counterclaim now before this federal court is not the state-court counterclaim and the federal counterclaim was not filed until after October 26. This court disagrees with Lanier & Associates and Chattawood Insurance.

In *H.L. Peterson Company v. Applewhite*, 383 F.2d 430, 435 (1967), the former Fifth Circuit explained that, when "Both forums were adequate ... to prevent fragmentation," "The dual system of courts should not be used as a procedural device or trap to fragment litigation." The court then held that a timely claim in state court could toll an otherwise untimely counterclaim in federal court, when the federal counterclaim

plaintiff "is involuntarily in the federal forum and makes every possible effort to litigate the question in the state court." *Id.* "This was sufficient ... to toll the statute of limitations as to the counterclaim." *Id.*

Here, the Old Republic companies brought a timely counterclaim for clarification in state court, and they later had to refile their counterclaim in federal court only because Lanier & Associates and Chattawood Insurance switched forums. These circumstances are sufficient to toll the statute of limitations as to their federal counterclaim.

**53.** The plaintiffs' brief, filed February 5, 1996, exhibits 7A and 7B. One of the letters is from Old Republic Union Insurance Company, while the other is from Old Republic Union Insurance Company. The wording of the two letters is nearly identical, and each company paid $200,000 of the $400,000 breach-of-contract claim. The only difference is that the companies withdrew different amounts from the custody accounts in November of 1994, and the financial calculations are adjusted to reflect those differences.

subsequent trial on the negligent entrustment claim, the jury increased the net punitive damages award to each estate to $4,000,000, but the trial judge, *sua sponte,* reduced them back to $2,250,000. Plaintiff accepted the $2,250,000 in punitive damages but appealed the trial judge's reduction from $4,000,000. The Eleventh Circuit held that federal common law, rather than Alabama law, should be applied to determine whether the acceptance-of-benefits doctrine barred an appeal. 39 F.3d at 1153. The court stated that " 'It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount does not, standing alone, amount to an accord and satisfaction of the entire claim.' " *Id.* (quoting *United States v. Hougham,* 364 U.S. 310, 312, 81 S.Ct. 13, 16, 5 L.Ed.2d 8 (1960)). The court further stated that, "when a court adjudicates separate and divisible controversies, the appealing party may accept the benefit of the divisible feature in his favor and challenge the portion adverse to him." *Id.*

In this case, the issue of limitations on future loss adjustment expenses is "separate and divisible" from the issue of payment of damages for past losses and loss adjustment expenses. In addition, both letters which accompanied the $400,000 payment expressly reserved the right to contest the cap on loss adjustment expenses.[54] Therefore, the court concludes that the acceptance-of-benefits doctrine does not bar a remand for clarification of the limitation on future loss adjustment expenses.

## III.  CONCLUSION

An appropriate judgment will be entered granting in part and denying in part the Old Republic companies' motion to remand the arbitration award for clarification and granting in part and denying in part Lanier & Associates and Chattawood Insurance's petition for entry of judgment.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, AND DECREE of the court that:

(1) The motion to remand for clarification, filed by defendants Old Republic Insurance Company and Old Republic Union Insurance Company on February 22, 1996, is granted to the extent that the arbitration panel's final award of July 14, 1995, is remanded for clarification of what the phrase "11.8% thereof" means.

(2) Said motion to remand for clarification is denied in all other respects.

(3) The petition for entry of judgment, filed by plaintiffs J.T. Lanier & Associates and Chattawood Insurance Company on October 27, 1995, is granted to the following extent:

(A) Plaintiff Chattawood Insurance Company is awarded the excess over 102%, if any, of the assets remaining over funds required in the custody accounts.

(B) Plaintiff Lanier & Associates is awarded interest on its $400,000 breach of contract award and that the interest shall be calculated at the statutory interest rate beginning 30 days after the arbitration panel's final award of July 14, 1995.

(4) Said petition for entry of judgment is denied in all other respects.

The clerk of the court is DIRECTED to take appropriate steps to effect the limited remand to the arbitration panel.

It is further ORDERED that each party is to bear its own costs.

54. The plaintiffs' brief, filed February 5, 1996, exhibits 7A and 7B.