Salvatore Anthony **FRADELLA,**
Plaintiff, Appellant,

v.

Richard T. **PETRICCA,** Defendant,
Appellee.

No. 98–2241.

United States Court of Appeals,
First Circuit.

Submitted May 10, 1999.

Decided July 7, 1999.

---

Chase A. Caro, with whom Caro & Associates, P.C., Thomas J. Butters and Butters, Brazilian & Small, LLP were on brief for appellant.

Kathryn W. Kyle, with whom Michael E. MacDonald and Cain, Hibbard, Myers & Cook, P.C. were on brief for appellee.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and POLLAK,* Senior District Judge.

CYR, Senior Circuit Judge.

On December 18, 1997, an arbitration panel convened by the National Association of Securities Dealers (NASD) ordered appellant Salvatore A. Fradella to pay appellee Richard T. Petricca $25,000 in compensatory damages. In subscribing the award the arbitrators purported to act pursuant to New York law.[1] One month later Fradella's attorney wrote to NASD counsel, advising that the December 18 award was "imperfect as to form," in that "it should reflect that the [arbitrators'] decision was made in accordance with Massachusetts, not New York, practice."

On February 23, NASD counsel sent Fradella revised signature pages, which deleted the earlier references to New York law but continued to reflect the date of the arbitral award as December 18, 1997. Thereafter, Fradella's attorney again wrote to NASD counsel, advising that the date of the "final" arbitral award should be February 23, 1998, rather than December 18, 1997. On February 27, NASD counsel notified Fradella that the earlier date remained in effect, and that Fradella should refer to it in any motion to vacate the award.

Fradella moved to vacate the award on March 25, 1998. *See* Federal Arbitration Act (FAA), 9 U.S.C. § 10(a). Petricca responded by moving for summary judgment on the ground that the motion to vacate was seven days late. *See id.* § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.").

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. The arbitrators' signatures appear below the following language: "[the undersigned] hereby affirm, pursuant to Article 7505 of the New York Civil Practice Laws and Rules, that [we are] the individual[s] described herein, and who executed this instrument which is [our] decision in the above-referenced matter." Article 7505 invests arbitrators with the powers to issue subpoenas and administer oaths, which powers are conferred by the NASD Code of Arbitration Procedure as well.

The district court entered summary judgment for Petricca after determining that the December 18 arbitral award was "final" because it had resolved all claims submitted in the demand for arbitration, and the arbitrators' subsequent correction of the award as to mere "ministerial" or "uncontroversial" details (*i.e.,* the ambiguity concerning choice of law) did not impede the finality of the December 18 award.

■ On appeal, Fradella first contends that the December 18 award did not become final for FAA § 12 purposes, because, contrary to the district court's characterization, the arbitrators' February 23 amendment was both substantive and substantial, rather than "ministerial." We do not agree.[2]

■ The primary purpose served by the arbitration process is expeditious dispute resolution. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Consequently, somewhat different standards govern the finality of judgments and arbitral awards. *See Dreis & Krump Mfg. Co. v. International Ass'n of Machinists and Aerospace Workers,* 802 F.2d 247, 251 (7th Cir.1986). Normally, an arbitral award is deemed "final" provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter, such as damages or backpay calculations. *See, e.g., id.* (noting that unresolved calculation of "the precise amount of backpay . . . was, therefore, a 'ministerial' detail, such as would not have prevented the [award] from being deemed final"). Accordingly, under the applicable finality standard, the arbitral award to Petricca unquestionably became "final" on December 18, since it unambiguously determined that Fradella owed Petricca $25,000 on the securities claim and Fradella does not contend that it left any other "claim" unresolved.

The one remaining question is whether either the erroneous signature page and/or its subsequent amendment on February 23 cast doubt upon the arbitrators' intention that the December 18 award resolved all "claims" submitted to arbitration. Since the choice-of-law issue itself in no sense constituted an arbitrable "claim," as distinguished from a subsidiary determination regarding the legal regimen under which the securities "claim" was to be decided, we conclude that the December 18 arbitral award finally resolved the only "claim" Petricca submitted to arbitration—*i.e.,* the securities claim—because there is no suggestion that any counterclaim or affirmative defense remained undecided.[3]

In all events the *finality vel non* of the arbitral award itself could not have been

---

**2.** Treating the evidence in the light most favorable to Fradella, we review the summary judgment ruling *de novo* in order to determine whether there existed a triable issue of material fact or Petricca was entitled to judgment as a matter of law. *See Brennan v. King,* 139 F.3d 258, 262 (1st Cir.1998). We review the district court's interpretation of the FAA *de novo* as well. *See Strickland v. Commissioner, Me. Dep't of Human Servs.,* 96 F.3d 542, 545 (1st Cir.1996).

**3.** Simply as an aside, we note also that it is not possible to determine whether the arbitrators applied New York Law in their December 18 decision. The clause deleted on February 23 may have signified either that the arbitrators (1) mistakenly applied New York *respondeat superior* principles in resolving the securities claim in the first instance; (2) correctly applied Massachusetts *respondeat superior* principles to the merits of the securities claim in the first instance, but merely treated New York procedural law as the source for their authority to issue subpoenas and administer oaths; *or* (3) decided the case under Massachusetts law only, but inadvertently included the reference to New York practice. Furthermore, Fradella neither suggests that Massachusetts and New York *respondeat superior* principles differ, nor that any choice-of-law issue would have been dispositive of the securities claim itself. Instead, Fradella conceded that the error was one of "form," *see supra,* and that the arbitrators had applied Massachusetts law in the first instance.

affected by any mistaken indication as to the governing law. Were such alleged subsidiary "mistakes" sufficient to divest an arbitral award of its finality, the running of the limitations period prescribed in FAA § 12 could be postponed or suspended indefinitely. In the process, the "finality" test applicable to arbitral awards would be severely undermined, along with the central purpose served by arbitration proceedings.

That is to say, if the limitations period prescribed in FAA § 12 were subject to suspension simply because an arbitral award contained error, even though the arbitrators had intended to resolve all submitted "claims," an unsuccessful party could *preclude the commencement*—or *suspend* the running—of the limitations period simply by alleging subsidiary errors in their FAA § 10 motions to vacate an adverse arbitral award. Thus, the contention that mere error—whether ministerial, procedural or substantive—renders an arbitral award non-"final" is fatally flawed.

As the present appeal demonstrates, *see supra* note 3, the finality standard suggested by Fradella would immerse reviewing courts in highly subjective, ad hoc assessments as to which arbitral errors are sufficiently "important" to preclude or suspend the running of the limitations period

under FAA § 12. Clearly, however, the parties to arbitration proceedings need reliable guidelines to enable timely compliance with the FAA § 12 limitations period. *See International Ass'n of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc.*, 928 F.Supp. 83, 89 (D.Mass.1996) ("[T]he court is unpersuaded that the distinction between ministerial tasks and significant issues provides a sufficiently clear guide for determining whether a vacatur action has accrued."). It is not surprising, therefore, that Fradella cites no authority for the finality standard he advocates, since it would run directly counter to the dominant policy goal of the FAA: promoting the expeditious and final resolution of arbitral claims. As the arbitrators plainly intended, their December 18 award resolved the securities claim submitted against Fradella, and the three-month limitations period commenced running immediately upon entry of the arbitral award.

Next, Fradella argues that even if the award became "final" upon entry, federal law conclusively establishes that an application to modify or clarify an arbitral award tolls the FAA § 12 limitations period. We reject this contention as well, since the authorities cited in support are clearly inapposite.[4]

---

**4.** *In re Warner–Chappell Music, Inc.*, 224 A.D.2d 301, 638 N.Y.S.2d 35, 35 (1996), interpreted the New York Arbitration Act, *see* N.Y. C.P.L.R. 7509, 7510, 7511. Unlike the FAA, both the New York Arbitration Act and the Uniform Arbitration Act (§ 9) expressly authorize the parties to apply to the arbitrators for modification within twenty days after an arbitral award. Based on the legislative history of the New York Arbitration Act, the courts have held that the legislature intended that the limitations period for filing a motion to vacate an award commence upon entry of an arbitral order disposing of such a *post-award* application, rather than upon entry of the original award. *See Belli v. Matthew Bender & Co.*, 24 A.D.2d 72, 263 N.Y.S.2d 846, 848 (1965) (per curiam), *cited in Warner–Chappell*, 224 A.D.2d at 302; *see also In re Harry Hoffman Printing, Inc.*, 912 F.2d 608, 614 (2d Cir.1990) (applying *Belli*); *cf. also* Fed. R.App. P. 4(a)(4) (tolling appeal period pend-

ing federal district court's disposition of post-judgment motion for reconsideration).

There is no comparable FAA provision. The only specified recourse for an aggrieved party under the FAA is to file a motion to vacate or modify the award in the district court, *see* 9 U.S.C. § 10(a)(4) (The court "may make an order vacating the award ... (4)[w]here the arbitrators exceeded their powers, or so *imperfectly executed them* that a mutual, final, and definite award upon the subject matter submitted was not made."), which can only remand an ambiguous arbitral award for clarification. *See Olympia & York Fla. Equity Corp. v. Gould*, 776 F.2d 42, 45 (2d Cir.1985). This vital distinction between the FAA, on the one hand, and the New York Arbitration Act and Fed. R.App. P. 4(a)(4) on the other, clearly indicates that Congress never intended that FAA § 12 be tolled by an application for reconsideration

■ Finally, Fradella suggests that the filing deadline in FAA § 12 is subject to equitable or "due diligence" tolling. Normally, a statutory limitations period is tolled only if, for example, extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline. *See, e.g., Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 60, 139 L.Ed.2d 23 (1997). We need not consider whether the deadline prescribed in FAA § 12 is subject to such equitable tolling, since Fradella has not generated a trialworthy issue as to his entitlement to invoke tolling.

■ Fradella was not victimized by fate or wile. No statutory or judicial authority supported his contention that the December 18 award was other than "final," nor that his application to correct the award tolled the FAA § 12 limitations period. *See, e.g., International Ass'n,* 928 F.Supp. at 86–87 ("Nor does a party moving for reconsideration of an arbitration award toll the running of the limitations period.") (citing *Dreis* ); *supra* note 4. Rather, in the application to correct the arbitral award, Fradella directly stated that the December 18 award was "imperfect as to *form,*" and flatly conceded that the arbitrators had in fact applied Massachusetts law (*i.e.,* "the [arbitrators'] decision *was made* in accordance with Massachusetts, not New York, practice"). (Emphasis added.) Moreover, in a February 27, 1998 letter, NASD counsel explicitly alerted Fradella's counsel that the official date of the arbitral award remained December 18, 1997, notwithstanding its subsequent correction on February 23, and that Fradella "should refer to the earlier date when [filing his] Motion to Vacate." Thus, neither the NASD nor Petricca misled Fradella in any respect.[5]

filed with the arbitrators. *See, e.g., Dreis,* 802 F.2d at 250.

Fradella cites *Lanier v. Old Republic Ins. Co.,* 936 F.Supp. 839 (M.D.Ala.1996), for the proposition that the limitations period in FAA § 12 is inapplicable to motions to remand for clarification. Although true, the proposition is irrelevant. *Lanier* involved a motion to remand filed in the district court as an alternative to a FAA § 10 motion to vacate, and although the court noted that the time for filing a motion to vacate may have lapsed, FAA § 12 by its express terms does not *apply* to remand motions. *See id.* at 843. Importantly, the court did not hold that the remand motion *tolled* the deadline under FAA § 12. By contrast, Fradella filed no remand motion with the district court. Nor is the *timeliness* of Fradella's application to correct the arbitral award a matter *at issue.* The only issue is whether the application he filed with the arbitrators to correct the December 18 award tolled the FAA § 12 limitations period, an issue on which *Lanier* is silent.

Fradella cites *Taylor v. Nelson,* 788 F.2d 220 (4th Cir.1986), for the proposition that "this period of time [in FAA § 12] may be tolled for various tolling or due diligence exceptions." Far from endorsing the proposition advanced by Fradella, however, the *Taylor* panel noted that "[t]he existence of such exceptions to § 12 is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law ex-

ceptions because there was no common-law analogue to enforcement of an arbitration award." *Id.* at 225 (dicta).

Lastly, in *Domino Group, Inc. v. Charlie Parker Mem'l Foundation,* 985 F.2d 417 (8th Cir.1993), the court did not hold that the three-month limitations period in FAA § 12 could run from the date of a post-decision clarification by the arbitrators. Instead, it simply noted that the aggrieved party had not filed a motion to vacate within three months of either the initial arbitral award or the clarifying arbitral decision entered after the court-ordered remand. Given so complete a waiver, there was no need for the Fourth Circuit to consider whether a motion to vacate filed within three months of the clarifying order would have been timely, even assuming the appellee had filed no previous motion to vacate within three months of the original arbitral decision. *Id.* at 419.

5. Fradella also offered a letter, from an unrelated arbitration proceeding, in which the NASD had stated that the thirty-day period within which an arbitral award must be paid would run from the date the arbitrators issued an amended award, correcting two typographical errors. This letter generated no trialworthy factual dispute as to the NASD's interpretation of an entirely different FAA provision (*viz.,* § 12), let alone overcame the NASD's explicit warning to Fradella in this case.

The decision to delay the motion to vacate was made by Fradella.

*AFFIRMED; costs to defendant-appellee.*