Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS








IN RE: CHEVRON U.S.A., INC.


                            Relator.

§
 
§
 
§
 
§
 
§
 
 § 




No. 08-08-00084-CV

AN ORIGINAL PROCEEDING
                        IN MANDAMUS



 

 

 




OPINION ON PETITION FOR WRIT OF MANDAMUS

            Chevron U.S.A.,Inc. (CUSA), seeks a writ of mandamus against the Honorable Bob Parks,
Judge of the 143rd District Court of Reeves County, Texas, to compel him to confirm two arbitration
awards. CUSA has also filed notice of appeal from an order which it contends effectively denies its
motion to confirm the arbitration awards. We conditionally grant mandamus relief and dismiss the
interlocutory appeal for want of jurisdiction.
FACTUAL SUMMARY
            This appeal and mandamus proceeding arise out of the Relators’ motion to confirm certain
arbitration awards and the Real Parties in Interest’s motion to vacate those awards. The Real Parties
in Interest are the co-trustees of the Texas Pacific Land Trust, James K. Norwood, Maurice Meyer,
III, and John R. Norris (collectively referred to as TPLT). TPLT filed a suit against CUSA for
damages related to TPLT’s non-participating royalty interests.
            In the late 1800’s, TPLT was given several million surface acres by the Texas Legislature in
exchange for constructing the Trans-Texas Railroad. In 1954, TPLT obtained a declaratory
judgment in a Texas district court authorizing it to create a subsidiary company, TXL Oil
Corporation, for the purpose of conveying to that company all of TPLT’s mineral interests. On
December 10, 1954, TPLT conveyed to TXL all of its mineral interests underlying its 2 million
surface acres. Under this conveyance, TXL reserved all of its surface acres as well as a non-participating royalty interest in those lands under an oil and gas lease to third parties. In 1962, TXL
sold all of the mineral interests to Texaco, Inc., and Texaco, Inc. conveyed these mineral interests
to Texaco Exploration and Production, Inc. (TEPI) in 1991. Texaco, Inc. and/or TEPI owned and
operated the mineral interests until 2002 when they were acquired by Chevron U.S.A. in the merger
between Chevron Corporation and Texaco, Inc. 
            The 1954 conveyance contains an arbitration clause which provides:
All claims, demands, disputes, differences and controversies between Assignors and
Assignee arising out of or concerning the terms and provisions of this instrument or
the rights, duties and obligations of the parties hereto shall be submitted to and be
determined and settled by arbitration in the following manner: Assignors and
Assignee shall each select an arbitrator within 10 days after demand for arbitration
has been given by one party to the other. The two arbitrators shall select a third
arbitrator within 10 days thereafter and the three so appointed shall constitute the
board of arbitrators. Said board of arbitrators shall meet and shall give opportunity
to each party hereto to present his case and witnesses, if any, in the presence of the
other, and shall then make its award in writing. The award of a majority of the
arbitrators shall be binding upon the parties hereto and judgment may be entered
thereon in any court having jurisdiction. Such award shall include the fixing of the
expense of the arbitration and assessment of the same against either or both parties. 

            On March 12, 2004, TPLT and CUSA agreed to add certain claims made by TPLT against
CUSA to an ongoing arbitration. The added claims included those which pertained to the following
properties:
Glasscock “L” Calverly (Glasscock County)
Midland “AW” Fee Well No. 1/TXL “N” 5-1 Well (Midland County)
Glasscock “P” Fee (Glasscock County) 
            Over the course of the next four years, the parties proceeded to arbitrate TPLT’s claims 
against CUSA before an arbitration panel comprised of the Honorable James R. Meyers (a retired
district judge), Laura Burney (an attorney and oil and gas professor), and Elizabeth Miller (an oil and
gas trial attorney). Between November 8, 2005 and November 27, 2007, the arbitration panel issued
ten arbitration orders. Order Nos. 1 through 8 were issued prior to the evidentiary hearing which
took place on May 14, 2007 through May 24, 2007. This mandamus proceeding concerns two of
those orders: Arbitration Order No. 4 issued on August 30, 2006 and Arbitration Order No. 9 issued
on July 9, 2007.
            In Arbitration Order No. 4, the arbitration panel addressed two motions for summary
judgment and a request for declaratory judgment filed by CUSA. Among other things, the arbitration
panel determined that the 1954 conveyance created duties requiring TXL and its successors to
develop and protect TPLT’s non-participating royalty interests, but it found that the duties did not
rise to the level of fiduciary duties. The arbitration panel also declared in this order that the four year
statute of limitations applied to TPLT’s claims for breach of the duty to develop and protect TPLT’s
non-participating royalty interests such that TPLT’s claims were limited to those occurring in the
four-year-period prior to the filing of the suit. 
            Arbitration Order No. 9 relates to several properties, including the Glasscock “L” Calverly,
Midland “AW” Fee Well No. 1/TXL “N” 5-1 Well, and Glasscock “P” Fee. In this order, the
arbitration panel reiterated its earlier ruling that the 1954 conveyance imposed on TXL and its
predecessors the duty to protect and develop the acreage burdened by TPLT’s non-participating
royalty interests as a reasonably prudent operator would under the same or similar circumstances. 
The panel also held that the 1954 conveyance did not create a separate duty of utmost good faith and
fair dealing, a duty to “equally develop” the burdened and unburdened acreage, or a duty to pay
compensatory royalty. 
            With respect to the Glasscock “L” Calverly property, the panel stated TPLT had made a claim
for bad faith pooling. TPLT argued that no unit should have been formed for the “L “ Fee Calverly
Unit Well No. 1 and the well should have instead been drilled further south or a Rule 37 permit
should have been obtained for the well at its actual location. The panel noted that TPLT had not
presented any evidence as to what would have been required to obtain a Rule 37 exception or
whether the Railroad Commission would have approved such an application. After considering the
evidence, the panel concluded that the evidence did not establish that the pooling was done in bad
faith and TPLT had failed to establish that a reasonably prudent operator would not have formed the
unit. The panel additionally found that such a claim was barred by the statute of limitations because
the unit had been formed in 1993 and TPLT had been accepting royalty payments on a unitized basis
since that time. 
            With regard to the Midland “AW” Fee, the panel characterized it as a failure to develop claim
based on an allegation that a reasonably prudent operator would have drilled at the proposed
location. The panel stated the applicable rule is that a reasonably prudent operator is not required
to drill a development well in the absence of a reasonable expectation of profit. It found that the
estimates of production from the proposed location are too speculative for the panel to conclude that
a reasonably prudent operator would have drilled a well at that location, and therefore, TPLT failed
to meet its burden of proof. 
            The panel also addressed the Glasscock “P” Fee in this order. It noted that TPLT framed the
issue as a failure to pool or “equally develop” but the panel held that it is a failure to protect claim. 
The panel found against TPLT on this claim because it failed to prove substantial drainage which
is an element of the claim. 
            On October 17 , 2007, CUSA filed an application in the district court to confirm the
arbitration awards and the court set it for hearing on December 14, 2007.


 In that application, CUSA
relied on the arbitration agreement dated March 12, 2004. On November 7, 2007, TPLT responded
with a motion to vacate the arbitration awards alleging “evident partiality” on the part of Miller. 
The arbitration panel, with Miller not participating, entered Arbitration Order No. 10 on
November 27, 2007 severing “[t]he properties addressed in Arbitration Orders 4, 8, and 9 . . . from
the remaining properties.” The arbitration panel’s order also severed the issue of attorney’s fees
which had not been addressed. 
            On or about November 30, 2007, TPLT filed a request for production of documents from
Miller’s law firm. CUSA responded by filing a motion to quash/motion for protective order
asserting that TPLT’s motion to vacate the arbitration awards was untimely because it was filed more
than three months after the issuance of Arbitration Order No. 9. TPLT sought to continue the
hearing on CUSA’s motion to confirm so it could conduct discovery on Miller’s law firm. The trial
court conducted the hearing scheduled for December 14, 2007 and entered an order on January 8,
2008 granting the motion for continuance. The court also denied the motion to quash and for
protective order. 
            Alleging that the trial court effectively denied its motion to confirm the arbitration awards,
CUSA filed a petition seeking mandamus relief. At the same time, CUSA filed notice of appeal. 
See Tex.Civ.Prac.&Rem.Code Ann. § 171.098(a)(3)(Vernon 2005). We consolidated the
mandamus proceeding and the interlocutory appeal for purposes of briefing, oral argument, and
decision. See In re Valero Energy Corporation, 968 S.W.2d 916, 916-17 (Tex. 1998)(instructing
that when a court of appeals is confronted with an interlocutory appeal and a mandamus proceeding
seeking to compel arbitration would be to consolidate the two proceedings and render a decision
disposing of both simultaneously, thereby conserving judicial resources and the resources of the
parties).
INTERLOCUTORY APPELLATE REVIEW IS UNAVAILABLE
            As a preliminary matter, we must determine whether the trial court’s rulings are reviewable
in an interlocutory appeal under the Texas General Arbitration Act (TGAA). If they are not,
mandamus review is available provided CUSA meets the well established mandamus standard. See
In re Poly-America, L.P., 262 S.W.3d 337, 345 (Tex. 2008)(orig. proceeding). The Federal
Arbitration Act (FAA) permits a party to appeal from an order confirming or denying confirmation
of an arbitration award. 9 U.S.C.A. § 16(a)(1)(D)(West 2009). But federal procedure does not apply
in Texas courts, even when Texas courts apply the FAA. See Jack B. Anglin Company v. Tipps, 842
S.W.2d 266, 272 (Tex. 1992). Consequently, appellate review is unavailable to CUSA under the
FAA. Section 171.098(a)(3) of the TGAA authorizes an appeal from an order confirming or denying
confirmation of an arbitral award. Tex.Civ.Prac.&Rem.Code Ann. § 171.098(a)(3). Because the
original arbitration agreement was entered prior to January 1, 1966, the TGAA is inapplicable to it. 
Tex.Civ.Prac.&Rem.Code Ann. § 171.002(a)(5)(TGAA does not apply to arbitration agreements
made before January 1, 1966). This case, however, is not based on the 1954 arbitration agreement
but is instead based on arbitration agreement made by the parties on March 12, 2004. The TGAA
does not authorize an interlocutory appeal from orders granting a continuance or permitting
discovery. See Universal Computer Systems, Inc. v. Dealer Solutions, L.L.C., No. 01-02-00219-CV,
2002 WL 31030747 (Tex.App.--Houston [1st Dist.] 2002, no pet.)(interlocutory order granting
plaintiffs’ motion to compel arbitration in part and denying it in part, but delaying entry until
resolution of discovery issues and ruling on objections to special master’s decision, was not
appealable; reading the order as a whole, the appellate court determined that the court was not
denying the motion to compel arbitration, but merely delaying the granting of it until certain
conditions had occurred). Because there is no basis for appellate jurisdiction under either the TGAA
or the FAA, we have dismissed the interlocutory appeal for want of jurisdiction in a separate opinion
and judgment issued this same date.



THE ISSUES
            Alleging that Arbitration Orders Nos. 4 and 9 are final for purposes of confirmation and that
TPLT failed to timely file its motion to vacate, CUSA asserts that the trial court abused its discretion
by failing to summarily confirm the confirmation awards. TPLT contends that Arbitration Orders
Nos. 4 and 9 did not become final until the arbitration panel entered the severance order, and
therefore, it timely filed the motion to vacate on the ground of evident partiality.
 

STANDARD OF REVIEW
            To be entitled to mandamus relief, a relator must meet two requirements. First, the relator
must show that the trial court clearly abused its discretion. In re Prudential Insurance Company of
America, 148 S.W.3d 124, 135 (Tex. 2004). Second, the relator must demonstrate it has no adequate
remedy by appeal. Id. at 136.
PREEMPTION BY THE FAA
            Generally speaking, the FAA and the TGAA are not mutually exclusive. See In re D. Wilson
Construction Company, 196 S.W.3d 774, 779 (Tex. 2006). The FAA does not preempt consonant
state law, only contrary state law. Id. Preemption occurs where application of state law would
undermine the goals and policies of the FAA. Id. The Texas Supreme Court has articulated a four-factor test to determine whether the FAA preempts the TGAA in a particular case: (1) the agreement
is in writing; (2) it involves interstate commerce; (3) it can withstand scrutiny under traditional
contract defenses under state law; and (4) state law affects the enforceability of the agreement. Id.
at 780; In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005)(per curiam). The mere
fact that a contract affects interstate commerce, thus triggering the FAA, does not preclude
enforcement under the TGAA as well. In re D. Wilson Construction, 196 S.W.3d at 780. For the
FAA to preempt the TGAA, state law must refuse to enforce an arbitration agreement that the FAA
would enforce, either because (1) the TGAA has expressly exempted the agreement from coverage
or (2) the TGAA has imposed an enforceability requirement not found in the FAA. Id. In the
instant case, the TGAA has expressly exempted the arbitration agreement from its coverage because
the agreement was made before January 1, 1966. Tex.Civ.Prac.&Rem.Code Ann. § 171.002(a)(5).
 

DOES THE FEDERAL ARBITRATION ACT APPLY?
            CUSA maintains that the FAA and cases interpreting its provisions apply in this case to
determine whether the three arbitration orders are final for purposes of confirming and vacating the
award. If the three orders are not final, the district court did not have jurisdiction to either confirm
or vacate the award. TPLT urges that because this case is in state court, the FAA does not govern
the procedures of confirmation and vacation.
            We will first consider whether the FAA applies to this arbitration generally. The FAA
applies to all suits in state and federal court when the dispute concerns a “contract evidencing a
transaction involving commerce.” Jack B. Anglin Company v. Tipps, 842 S.W.2d at 270, quoting
Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). Under the FAA,
“commerce” means commerce among the states. 9 U.S.C.A. § 1. Its application is not limited solely
to interstate shipment of goods. Jack B. Anglin Company v. Tipps, 842 S.W.2d at 270, citing Prima
Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n.7, 87 S.Ct. 1801, 1805 n.7, 18 L.Ed.2d 1270
(1967). In its response to CUSA’s mandamus petition, TPLT refuses to concede that the FAA is
applicable to the arbitration agreement between the parties, noting “that is a complex issue beyond
the scope of this proceeding.” TPLT did not contest the FAA’s applicability in the trial court. In
fact, TPLT expressly relied on 9 U.S.C.A. § 10(a)(2) in its motion to vacate the arbitration orders
on the ground of evident partiality.


 In its response to CUSA’s motion to quash the request for
production of documents from a non-party (Miller’s law firm), TPLT stated that the case is governed
by the Federal Arbitration Act. Similarly, TPLT’s counsel stated in open court during the December
14, 2007 hearing that “the standard of evident partiality is set forth in the federal statute, and that
federal statute governs this arbitration and the conduct of the arbitrators . . . .” Having sought relief
pursuant to the FAA and having advised the trial court that the FAA governs the case, TPLT should
not be heard to contest the applicability of the FAA. 
            When there is no express agreement to arbitrate under the FAA, a party may establish the
applicability of the FAA by showing that the transaction affects or involves interstate commerce.
Jack B. Anglin Co. v. Tipps, 842 S.W.2d at 269-70; Associated Glass, Ltd. v. Eye Ten Oaks Invs.,
Ltd., 147 S.W.3d 507, 511 (Tex.App.--San Antonio 2004, orig. proceeding). Commerce under the
federal act is broadly construed and the amount of commerce considered in the contract need not be
substantial. Eye Ten Oaks, 147 S.W.3d at 511. As long as a contract relates to interstate commerce,
the FAA is implicated. Id.
            By virtue of the agreement to arbitrate entered into on March 12, 2004, the parties agreed to
add certain claims to the existing arbitration being conducted pursuant to the arbitration clause in
the 1954 conveyance. The claims being added are related to oil and gas interests and are similar to
the claims already being arbitrated by the parties. It is a matter of common knowledge that the oil
industry involves interstate commerce. We conclude that the FAA governs enforcement of the
arbitration agreement at issue in this case.
CONFIRMATION AND VACATION OF ARBITRAL AWARD
            Section 9 of the FAA provides that if the parties have agreed that a judgment of the court
shall be entered upon the award made pursuant to the arbitration, and specifies the court, then at any
time within one year after the award is made any party to the arbitration may apply to the court so
specified for an order confirming the award. 9 U.S.C.A. § 9. The court must confirm the award
unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of the FAA. 
Id. A party seeking to vacate an award because of alleged “evident partiality” by a neutral arbitrator
must file a motion to vacate with the trial court “within three months after the award is filed or
delivered.” 9 U.S.C.A. § 12. The three month period is considered to be a limitations period. See
Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2nd Cir. 1984); Cullen v. Paine, Webber, Jackson
& Curtis, Inc., 863 F.2d 851, 853-54 (11th Cir. 1989)(noting that several other circuits treated the
three month period as a limitations period). If a party does not file a motion to vacate the award in
that time period, the trial court is required to grant an order confirming the award. 9 U.S.C.A. §§
9 and 12. If CUSA is correct that the arbitration orders became final no later than July 9, 2007,
TPLT did not timely file its motion to vacate and the trial court lacked discretion to delay ruling on
the motion to confirm.
ARE THE ARBITRATION ORDERS FINAL?
            TPLT contends that determination of whether the arbitration orders are final should be made
by looking at Texas law. “Procedural matters relating to the confirmation of arbitration awards in
Texas courts are governed by Texas law even if the FAA supplies the substantive rules of decision.” 
Garza/Phelps Dodge Refining Corp. v. Phelps Dodge Refining Corp./Garza, 262 S.W.3d 514, 519
(Tex.App.--El Paso 2008, no pet.), quoting Roehrs v. FSI Holdings, Inc., 246 S.W.3d 796, 804
(Tex.App.--Dallas 2008, pet. denied); see also Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272
(Tex. 1992)(“federal procedure does not apply in Texas courts, even when Texas courts apply the
Federal Act”); In re D. Wilson Constr. Co., 196 S.W.3d 774 (Tex. 2006)(FAA only preempts state
statutes to the extent that they are inconsistent with FAA); Hamm v. Millennium Income Fund,
L.L.C., 178 S.W.3d 256, 260 n.3 (Tex.App.--Houston [1st Dist.] 2005, pet. denied), cert. denied, 549
U.S. 888, 127 S.Ct. 297, 166 L.Ed.2d 154 (2006). We have determined, however, that the TGAA
does not apply in this case. Further, the finality of the arbitration orders is a matter of substantive
law. Accordingly, we will apply federal law in determining whether the arbitration orders are final
for purposes of confirmation and vacation.
            In the arbitration agreement, the parties agreed that the arbitration award would be final and
subject to confirmation by a court: “The award of a majority of the arbitrators shall be binding upon
the parties hereto and judgment may be entered thereon in any court having jurisdiction.” The FAA
requires that the arbitration award be “mutual, final, and definite” as a prerequisite to confirmation. 
See 9 U.S.C.A. § 10(a)(4)(an award may be vacated if it is not mutual, final, and definite). An
arbitral award is generally deemed final when it evidences the arbitrators’ intention to resolve all
claims submitted for arbitration. Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999); Michaels v.
Mariforum Shipping, S.A., 624 F.2d 411, 413 (2nd Cir. 1980). A court has no authority to review
an award lacking the requisite degree of finality. Michaels, 624 F.2d at 414. 
            Federal courts have recognized exceptions to the finality requirement. One exception exists
when the issues of liability and damages are bifurcated in the arbitration proceeding. See e.g., Hart
Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 236 (1st Cir. 2001)(where arbitration is bifurcated
into liability and damages phases, the arbitral award with respect to liability is a final award under
the FAA; the First Circuit limited its holding to cases in which the parties had formally agreed to
bifurcate the arbitration); Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16 (1st
Cir. 2001)(extending Hart Surgical to informal bifurcation agreement). Another exception to the
finality requirement has been found when the arbitration panel orders interim security or temporary
equitable relief. See e.g., Yasuda Fire & Marine Insurance Company of Eur. v. Cont'l Casualty Co.,
37 F.3d 345, 348 (7th Cir. 1994)(arbitral “interim order of security” found to be a final award
because the order was necessary to prevent the final award from becoming meaningless); Pacific
Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1023 (9th Cir. 1991)
(arbitral “interim final order” providing temporary equitable relief necessary to make potential final
award meaningful found to be final and subject to confirmation). A third exception exists when the
interim award finally disposes of a separate and independent claim. See e.g., Zeiler v. Deitsch, 500
F.3d 157, 168 (2nd Cir. 2007)(eight interim orders issued by arbitration panel were resolution of
separate and independent claim and subject to confirmation even though the orders did not dispose
of all claims submitted to arbitration); The Home Insurance Company v. RHA/Pennsylvania Nursing
Homes, Inc., 127 F.Supp.2d 482, 490 (S.D. N.Y. 2001)(an interim award which adjudicated a portion
of a damages claim and ordered the payment of that sum is final even though liability and potential
damages issues remained to be resolved with respect to the remainder of the same claim; court held
that an arbitration award that fully disposes of a separate and independent claim is final for purposes
of confirmation under the FAA even if other claims remain pending); Hart Surgical, Inc. v.
Ultracision, Inc., 244 F.3d 231 (1st Cir. 2001)(holding that an award which finally and definitely
disposes of a separate independent claim may be confirmed although it does not dispose of all the
claims that were submitted to arbitration); Publicis Communication v. True North Communications,
Inc., 206 F.3d 725, 727 (7th Cir. 2000)(interim arbitration order was sufficiently final and subject
to confirmation); Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2nd Cir.
1986)(noting that shipowner would have been entitled to summary judgment in a district court for
the amount of unpaid freight, court found that interim award of damages for unpaid freight was final
and subject to confirmation). Some courts have held that an interim award is final when it represents
the final determination of a discrete issue, and is not subject to change or revision by the arbitrators. 
Trade & Transport, Inc. v. Natural Petroleum Charterer, Inc., 931 F.2d 191, 195 (2nd Cir. 1991)
(partial arbitral award that decided liability found to be a final award); Island Creek Coal Sales Co.
v. City of Gainesville, Fla., 729 F.2d 1046, 1049 (6th Cir. 1984)(arbitral “interim order” that finally
and definitively disposed of separate, discrete, self-contained issue found to be final and subject to
confirmation), overruled on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,
529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).
            Relying on the separate and independent or discrete claim doctrine articulated in the
foregoing cases, CUSA maintains that Arbitration Orders 4, 8, and 9 are final because they finally
dispose of each of TPLT’s claims relating to each property which is the subject of those orders. 
CUSA argues that “whether CUSA diligently developed NPRI-burdened acreage in a particular
county in a particular locale had nothing to do with whether it was a diligent operator at other times
in other places in the context of completely different facts.” It goes on to reason that the orders
which deal with particular properties were sufficiently final for confirmation. We agree with CUSA
that Arbitration Orders 4 and 9 disposed of discrete claims pertaining to separate units of property. 
The claims resolved by these orders are not dependent on the resolution of or related to the remaining
claims, namely, the Section 1, Block 39 [Spraberry Trend] claim and the Section 31, Block 32 [Big
Spring “Fusselman” Field] claim,


 or the resolution of the attorney’s fees claims and assessment of
the costs of arbitration. Application of the separate and independent claim doctrine is particularly
appropriate in this case because the parties presented the case to the arbitration panel on a property-by-property basis and the parties expressly requested that the arbitration panel render a partial
decision on the properties submitted to the arbitration panel during the evidentiary hearing. The
arbitration panel agreed to render a decision on the properties submitted to it during the evidentiary
hearing. The request and ruling are reflected in the first paragraph of Arbitration Order No. 9:
On May 14, 2007, the arbitration panel convened to hear evidence in the above styled
arbitration. The panel was asked by the parties to render a partial decision on the
properties submitted at that hearing and the panel accordingly does so in this order. 
This order does not address the properties not reached, nor does it address attorneys’
fees nor costs of arbitration all of which are reserved. With respect to the properties
submitted to it, the panel makes the following decision . . . . 

            Under these unique circumstances, we conclude that Arbitration Orders 4 and 9 are
sufficiently final for purposes of confirmation and vacation. The three-month limitations period for
filing a motion to vacate the awards began to run no later than July 9, 2007 when the arbitration
panel entered Arbitration Order No. 9. See 9 U.S.C.A. §§ 10 and 12. Because TPLT filed its motion
to vacate on November 7, 2007 after the expiration of the limitations period, the trial court had a
ministerial duty to deny the motion to vacate and grant the motion to confirm. The court abused its
discretion by failing to so rule and by continuing the hearing on the competing motions to confirm
and vacate in order for discovery to be undertaken on the evident partiality issue. We conditionally
grant CUSA’s petition for writ of mandamus. The writ will not issue unless the trial court fails to
act in accordance with this opinion.

January 27, 2010                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Ables, Judge (Ret.)
Ables, Judge (Ret.), sitting by assignment, not participating