Nicole DOMNARSKI, Plaintiff

v.

UBS FINANCIAL SERVICES, INC., Defendant.

Civil Action No. 12–30139–KPN.

United States District Court, D. Massachusetts.

Jan. 30, 2013.

Nancy C. Flahive, Law Offices of Nancy C. Flahive, Springfield, MA, for Plaintiff.

David J. Sullivan, Schuyler, Roche, Crisham, P.C., Chicago, IL, David W. Krumsiek, Perry, Krumsiek and Dolan, LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO VACATE AND DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD (Document Nos. 1 and 6)*

NEIMAN, United States Magistrate Judge.

Nicole Domnarski ("Plaintiff") has filed a complaint to vacate an arbitration award in favor of UBS Financial Services, Inc. ("Defendant") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* The court will treat Plaintiff's complaint as a motion to vacate the arbitration award. *See National Casualty Co. v. First State Insurance Group*, 430 F.3d 492, 496 n. 3 (1st Cir.2005) (stating that "[t]he general rule under the FAA ... is that challenges brought under its provisions follow the rules of motion practice" and that the district court's treatment of the complaint as a motion "appears to have been proper") (citing *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 745–46 (11th Cir.1988); 9 U.S.C. § 6). Defendant, in turn, has filed a cross-motion to confirm the award.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the following reasons, the court will deny Plaintiff's motion to vacate and allow Defendant's motion to confirm.

### I. BACKGROUND

The following facts, which derive from the evidence provided by the parties, are undisputed.

Plaintiff worked for Defendant as a financial advisor from November 19, 2008, to August 25, 2011. (Exhibit B (Attached to Defendant's Response to Plaintiff's Complaint and Cross–Motion to Confirm Arbitration Award ("Def. Cross–Motion to Confirm")).) Pursuant to the terms of Plaintiff's employment, any disputes between Plaintiff and Defendant were to be arbitrated by the Financial Industry Regulatory Authority ("FINRA")—of which Defendant is a member—and under the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Code"). (Id.)

In connection with her employment, Plaintiff received two Employee Transition Program loans, memorialized by two promissory notes. (Id.) On August 25, 2011, Plaintiff ceased working for Defendant. Soon thereafter, on August 30, 2011, Defendant sent Plaintiff a letter demanding repayment of $126,442.58, the balance of the loans, pursuant to the promissory notes and advising her of its intent to arbitrate the matter in the event she did not pay. (Exhibit A (Attached to Def. Cross–Motion to Confirm).) On September 18, 2011, Plaintiff's attorney, as attested to by her, sent Defendant a letter contesting Plaintiff's obligation to repay the loans and indicating that Plaintiff wished to resolve the matter through arbitration. (Exhibit A (Attached to Plaintiff's Opposition to Defendant's Motion to Confirm ("Pl. Opp.")).) In the letter, Plaintiff's attorney attests, she also stated that all future communications regarding the matter,

including arbitration, were to be directed to the her and not to Plaintiff. (Id.)

On January 9, 2012, Defendant filed a statement of claim with FINRA seeking monetary relief in arbitration. (Exhibit A (Attached to Def. Cross–Motion to Confirm).) On January 11, 2012, FINRA served the statement of claim on Plaintiff herself along with a letter informing her that she was named a party in the arbitration and explaining the arbitration procedure.[1] (Id.) In particular, the letter stated that Plaintiff was required to file an answer by March 1, 2012, or the arbitration panel could bar her from presenting at the hearing. (Id.) When FINRA did not receive a timely answer from Plaintiff, it sent her another letter on March 7, 2012, informing her that failure to file an answer could result in the arbitration panel barring her from presenting at the hearing and could also subject her to default proceedings. (Id.) On April 11, 2012, FINRA sent a letter to both parties advising them that an arbitrator was selected. (Id.)

Plaintiff never filed an answer and did not appear at the arbitration proceeding. (Exhibit A (Attached to Pl. Opp.); Exhibit A (Attached to Def. Cross–Motion to Confirm).) On April 24, 2012, the arbitrator issued an award in favor of Defendant for $126,442.58 in compensatory damages and $300 in costs. (Exhibit A (Attached to Def. Cross–Motion to Confirm).) FINRA sent the decision to Plaintiff on April 27, 2012, by way of Federal Express Next Day Delivery, and Plaintiff received it on April 28, 2012. (Id.) Plaintiff's attorney received the arbitration decision from Plaintiff herself on May 1, 2012. (Exhibit A (Attached to Pl. Opp.).) On July 31, 2012, Plaintiff filed the instant motion to vacate the arbitration award.

## II. STANDARD OF REVIEW

■■■■ The court's "review of arbitral awards is 'extremely narrow and exceedingly deferential' " and, as a result, " '[a]rbitral awards are nearly impervious to judicial oversight.' " *National Casualty Co. v. First State Ins. Group,* 430 F.3d 492, 496 (1st Cir.2005) (quoting *Bull HN Info. Sys., Inc. v. Hutson,* 229 F.3d 321, 330 (1st Cir.2000)). "The FAA 'embodies a national policy favoring arbitration,' *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and provides only a narrow set of statutory grounds for a federal court to vacate an award." *Bangor Gas Co., LLC v. H.Q. Energy Servs. Inc.,* 695 F.3d 181, 187 (1st Cir.2012). As pursued by Plaintiff here, these grounds include "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).

## III. DISCUSSION

Plaintiff asserts that the court should vacate the arbitration award because, despite the September 18, 2012 letter to Defendant from Plaintiff's attorney directing that all future communications be sent to her, Defendant failed to provide Plaintiff's attorney with notice of its statement of claim and failed to advise FINRA that Plaintiff was represented by counsel. According to Plaintiff, Defendant's conduct in this regard constituted "corruption, fraud, or undue means" under 9 U.S.C. § 10(a)(1) of the FAA.

For its part, Defendant denies any such conduct and contends that Plaintiff's argument regarding the lack of service to her attorney is not a proper basis for vacating the arbitration award. More pointedly, Defendant asserts that Plaintiff filed her

---

1. FINRA sent the statement of claim and letter to the same address which is listed in this action as Plaintiff's address. (Exhibit A (Attached to Def. Cross–Motion to Confirm).) Plaintiff has not denied that she received these documents.

motion to vacate outside the three-month limitations period set forth in 9 U.S.C. § 12 of the FAA. Accordingly, Defendant asserts that the court should deny Plaintiff's motion to vacate and allow its cross-motion to confirm.

## A. *Statute of Limitations*

■ As to Defendant's argument regarding the three-month limitations period, Plaintiff contends that the period should not have begun to run until her attorney received the arbitration decision from her on May 1, 2012, rather than on April 27, 2012, when Plaintiff herself received the decision. In response, Defendant asserts that there is no legal support for Plaintiff's tolling argument and that, as such, Plaintiff's motion was filed too late. The court agrees with Defendant.

Section 12 of the FAA provides in relevant part as follows: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Here, by agreeing to arbitrate before FINRA and pursuant to the FINRA Code, the parties incorporated FINRA's procedural rules into their agreement. *See Kashner Davidson Securities Corp. v. Mscisz*, 531 F.3d 68, 77 (1st Cir.2008). FINRA Code § 13300(e) provides in relevant part that "[f]iling and service are accomplished on the date of mailing either by first-class postage prepaid mail or overnight mail service, or, in the case of other means of service, on the date of delivery." In accordance with this provision, the limitations period began to run on April 27, 2012, when FINRA sent the arbitration decision via Federal Express Next Day Delivery.

*See Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 573 (7th Cir.2007) (holding that because parties agreed to arbitrate pursuant to American Arbitration Association ("AAA") procedures, AAA's rule that "delivery" occurs when the award is placed in the mail applied for purposes of 9 U.S.C. § 12). Thus, Plaintiff's motion was at least four days late.[2]

Even assuming that Plaintiff's actual *receipt* of the arbitration decision, *i.e.*, April 28, 2012, began the running of the limitations period, it is undisputed that Plaintiff's filing of the present motion on July 31, 2012, was untimely by three days. *See Fradella v. Petricca*, 183 F.3d 17, 18 (1st Cir.1999) (affirming district court's denial of motion to vacate arbitration award when it was filed seven days late). Unfortunately for her cause, Plaintiff has not cited nor can she cite any case law which excuses such late filing, no matter how short it may appear. *See Rice v. New England College*, 676 F.2d 9, 11 (1st Cir.1982) ("In the absence of a recognized equitable consideration, the court cannot extend the limitations period even by one day.").

■ Nevertheless, Plaintiff appears to argue that the limitations period should somehow be "tolled." "The doctrine of equitable tolling suspends the running of [a] statute of limitations...." *Barreto–Barreto v. United States*, 551 F.3d 95, 100 (1st Cir.2008) (quoting *Ramirez–Carlo v. United States*, 496 F.3d 41, 48 n. 3 (1st Cir.2007)). In this regard, the First Circuit has explained that "[n]ormally, a statutory limitations period is tolled only if, for example, extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline." *Fra-*

---

**2.** Although Defendant asserts that it did not receive legally sufficient notice of Plaintiff's motion until August 7, 2012, the court will assume for present purposes that July 31, 2012, was the date of notice to Defendant in light of certain evidence Plaintiff has provided.

*della,* 183 F.3d at 21. Even there, however, the First Circuit ultimately held that it need not decide whether section 12 of the FAA is subject to equitable tolling because the circumstances cited by the defendant—a mistaken statement in the arbitration decision that New York law governed and the subsequent delivery of a corrected decision—would not have invoked tolling in any event. *Id.* Similarly here, this court concludes that even if the tolling doctrine may be invoked, Plaintiff has not set forth any grounds for its application.

■ At best, without citing any case law, Plaintiff asserts that "the timing of the filing to vacate the arbitration should not have begun to [run] until her attorney received notice of the decision [on May 1, 2012]." However, this is not a situation in which there were "extraordinary circumstances" beyond Plaintiff's control or in which she was "materially misled into missing the deadline." As Defendant argues, "[a] party cannot extend the deadline to vacate an award by simply waiting to forward a copy of the award to her attorney." Quite to the contrary, Plaintiff (and her attorney) had more than adequate time to file the instant motion but failed to do so. *See Fradella,* 183 F.3d at 21–22 ("The decision to delay the motion to vacate was made by Fradella."). Plaintiff was hardly unaware of an obligation to proceed expeditiously; in fact, as Plaintiff asserts in her memoranda, her attorney had multiple conversations with Defendant's attorney "between the months of May and June" concerning the arbitration award. In short, Plaintiff is not entitled to equitable tolling and her motion remains untimely.

**B. *"Corruption, Fraud, or Undue Means"***

■ Even if Plaintiff could somehow survive her untimely filing, the court also agrees with Defendant that Plaintiff has not asserted a proper basis for vacating the arbitration award. As mentioned, Plaintiff claims that Defendant's failure to provide the statement of claim to Plaintiff's attorney or advise FINRA that she was represented by counsel constituted "corruption, fraud, or under means" under 9 U.S.C. § 10(a)(1), which justifies vacatur.

. Although the First Circuit has not explicitly construed the terms "corruption" and "fraud" as used in the statute, it has defined "undue means," and that definition sheds light on the meaning of the other terms. In· *National Casualty Co.,* the First Circuit explained:

> The phrase "undue means" in the statute follows the terms "corruption" and "fraud." It is a familiar principle of statutory construction that a word should be known by the company it keeps.... The best reading of the term "undue means" under the maxim *noscitur a sociis* is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either.

*National Casualty Co.,* 430 F.3d at 499 (internal citation omitted). In turn, many courts require, as to the showing of "fraud" under section 10(a)(1) of the FAA, that a party demonstrate "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.,* 335 F.3d 497, 503 (6th Cir.2003); *see also Forsythe Intern., S.A. v. ·Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1022 (5th Cir.1990); *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir.1988); *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293,

1297 (9th Cir.1982); *Sleeper Farms v. Agway, Inc.*, 460 F.Supp.2d 184, 187 (D.Me. 2006).

With these principles in mind, the court concludes that Plaintiff has not demonstrated and cannot demonstrate that "corruption, fraud, or undue means" on Defendant's part justifies vacating the arbitration award. First, Defendant complied with the FINRA Code—which, as mentioned, was incorporated into the arbitration contract, *see Kashner Davidson Securities Corp.*, 531 F.3d at 77—by sending the statement of claim directly to FINRA, not to Plaintiff or her attorney. Section 13300(a) of the FINRA Code provides that the "[i]nitial statements of claim must be filed with the Director [of FINRA], with enough copies for each other party and each arbitrator"; in turn, "[t]he Director will serve the statement of claim on the other parties, and send copies of the statement of claim to each arbitrator." In accord with these provisions, the FINRA Director then sent the statement of claim directly to Plaintiff at the same address she lists in this action. *See* FINRA Code § 13301(a) ("The Director will serve the initial statement of claim on an associated person directly at the person's residential address or usual place of abode."). As Defendant asserts, "there was nothing immoral or deceitful in the routine manner in which the arbitration was commended and proceeded."

Second, FINRA sent multiple reminders to Plaintiff to file her answer and warnings as to the consequences of failing to do so. Thus, due diligence on Plaintiff's part, namely, forwarding the documents to her attorney, would have ensured notice to her attorney and prompted discovery of any problem. *See Int'l Bhd. of Teamsters, Local 519*, 335 F.3d at 503 ("To merit vacation of the arbitration award, [the plaintiff] must demonstrate ... (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration."). That simply did not occur.

To be sure, Plaintiff alleges that "[a]ll of [her] time and effort during this period were focused on taking care of her mother," who was battling terminal cancer, and that she assumed her attorney was taking care of the arbitration issue. These unfortunate circumstances, however, do not transform this case into one of "corruption, fraud, or undue means" on Defendant's part. Even if Defendant were somehow obligated to inform FINRA that Plaintiff was represented by counsel and that she wanted all correspondence directed to her attorney, and assuming that FINRA would have disregarded its procedure requiring that the statement of claim be sent directly to Plaintiff, both of which are doubtful, the court would still conclude that this case does not rise to the level of "corruption, fraud, or undue means." *See Sanders v. Gardner*, 7 F.Supp.2d 151, 169–170 (E.D.N.Y.1998) (citing cases for the proposition that courts cannot vacate arbitration awards based merely on a "technical procedural irregularity").

IV.  CONCLUSION

For the reasons stated, the court DENIES Plaintiff's motion to vacate the arbitration award and ALLOWS Defendant's motion to confirm that award. *See Sanders*, 7 F.Supp.2d at 158 ("Once an award has been entered, section 9 of the FAA provides that a court, upon timely application by any party, must issue an order confirming the award unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11.").

IT IS SO ORDERED.